Christopher **JENKINS,**
Appellant/Defendant,

v.

**STATE of Indiana, Appellee/Plaintiff.**

No. 49A05–0812–CR–711.

Court of Appeals of Indiana.

July 23, 2009.

Anna E. Onaitis, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Gary Damon Secrest, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BRADFORD, Judge.

Appellant/Defendant Christopher Jenkins appeals from his convictions for Class C felony Cocaine Possession [1] and Class D felony Methamphetamine Possession,[2] the trial court's restitution order, and the sentence he received. We affirm in part and reverse in part.

## FACTS AND PROCEDURAL HISTORY

On February 27, 2008, Indianapolis Metropolitan Police Officer Robert Carrier noticed Jenkins driving his vehicle without his safety belt. When Officer Carrier activated his lights and siren, Jenkins "took off." Tr. p. 9. Jenkins eventually pulled into a driveway and "exited [his vehicle] jumping fences and running[.]" Tr. p. 10. As Jenkins fled, he carried a "silver, shiny" object that "looked like a can[.]" Tr. p. 12. Jenkins dropped the object when jumping over the first fence he came to but retrieved it before continuing his flight. Jenkins jumped over another fence and ran through a creek into the backyard of another residence at 9625 East 42nd Street, still holding the object.

Officer Carrier briefly lost sight of Jenkins shortly after Jenkins, still holding the object, jumped over a fence into the backyard of 9625 East 42nd Street. Approximately three minutes later, Officer Carrier found Jenkins hiding underneath a truck in the driveway of 9625 East 42nd Street, and police had to use force, including a taser, to apprehend Jenkins. Jenkins no longer had the object in his possession. When police asked the owner of the residence to search her backyard, she found a false-bottomed can next to a trash can in the side yard, in an area where Jenkins had been running. Inside the can, police found several baggies containing a total of 3.2098 grams of cocaine and five tablets of methamphetamine. Tr. p. 19.

On February 28, 2008, the State charged Jenkins with Class C felony cocaine possession, Class D felony methamphetamine possession, Class D felony resisting law enforcement, and Class A misdemeanor resisting law enforcement. On September 23, 2008, the trial court found Jenkins guilty as charged. On November 13, 2008, the trial court sentenced Jenkins to eight years of incarceration for cocaine possession, six months for methamphetamine possession, six months for Class D felony resisting law enforcement, and six months for Class A misdemeanor resisting law enforcement. The trial court ordered that

---

1. Ind.Code § 35–48–4–6 (2007).

2. Ind.Code § 35–48–4–6.1 (2007).

all sentences would be served concurrently, with six years suspended and two of those suspended to probation. Additionally, the trial court ordered that Jenkins pay $55 restitution to Officer Carrier for a uniform destroyed in the pursuit of Jenkins.

## DISCUSSION AND DECISION

### I. Sufficiency of the Evidence

■ Jenkins contends that the State produced insufficient evidence to sustain his convictions for cocaine and methamphetamine possession.[3] Specifically, Jenkins contends that the State failed to establish that the can found in the side yard of 9625 East 42nd Street was the object that he was carrying when fleeing Officer Carrier. Our standard of review for challenges to the sufficiency of the evidence supporting a criminal conviction is well-settled:

> In reviewing a sufficiency of the evidence claim, the Court neither reweighs the evidence nor assesses the credibility of the witnesses. We look to the evidence most favorable to the verdict and reasonable inferences drawn therefrom. We will affirm the conviction if there is probative evidence from which a reasonable jury could have found Defendant guilty beyond a reasonable doubt.

*Vitek v. State,* 750 N.E.2d 346, 352 (Ind. 2001) (citations omitted). "[C]onviction for possessory offenses does not depend on the accused being 'caught red-handed' in the act by the police." *See Wilburn v. State,* 442 N.E.2d 1098, 1101 (Ind.1982).

■ We conclude that the State produced sufficient evidence to establish that the false-bottomed can found in the side yard of 9625 East 42nd Street was the object in Jenkins's actual possession as he fled. Officer Carrier testified that Jenkins was carrying a silver, shiny object resem-

bling a can when he jumped over the fence into the back yard at 9625 East 42nd Street and that he no longer had it when apprehended minutes later. Officer Carrier's description of the object Jenkins was carrying matches that of the false-bottomed can found soon thereafter in the side yard. The yard in question was fenced in, and although the owner testified that, other than herself, "can't nobody walk in there" because of her dogs, Officer Carrier testified that he had seen Jenkins "jump[ ] the fence into that back yard." Tr. p. 16, 34. Moreover, the owner testified that the false-bottomed can found in her side yard was neither hers nor her husband's. In the end, the record contains no evidence that anyone other than Jenkins and the owners had been in the side yard recently, and there is evidence that the can did not belong to the owners. Under the circumstances, the trial court was entitled to conclude that Jenkins was the person who had left the can there and, therefore, that he had possessed it.

■ Finally, Jenkins's actions indicate that the can in his hand contained something more incriminating than beer, as he claimed at trial. First, Jenkins retrieved the can early in his flight after dropping it, even though he was being pursued by Officer Carrier. Second, Jenkins's flight itself leads to a reasonable inference of guilt. *See Jones v. State,* 485 N.E.2d 627, 628 (Ind.1985). Taken together, the evidence raises a reasonable inference that Jenkins left the can in the side yard as he attempted to flee Officer Carrier. *See, e.g., Womack v. State,* 738 N.E.2d 320, 324 (Ind.Ct. App.2000) (concluding, in case where bag containing marijuana was found near where defendant was observed making throwing motion during flight and bag was covered in water droplets despite snow that night, that State produced sufficient

---

3. Jenkins does not challenge his two resisting   law enforcement convictions.

evidence to establish actual possession). The State produced sufficient evidence to sustain Jenkins's convictions for cocaine and methamphetamine possession.

## II. Restitution Order

■■■ Jenkins contends that the trial court abused its discretion in ordering that he pay $55 restitution to Officer Carrier. An order of restitution is within the sound discretion of the trial court and will be reversed only for an abuse of that discretion. *Henderson v. State*, 848 N.E.2d 341, 345–46 (Ind.Ct.App.2006). Jenkins contends, and the State concedes, that the State failed to present any evidence establishing that Officer Carrier tore his uniform or incurred loss as a result of Jenkins's actions. As such, the trial court's restitution order constitutes an abuse of discretion.

## III. Whether Jenkins's Sentence is Inappropriate

■■■ Jenkins contends that his sentence is inappropriate in light of the nature of his offenses and his character. We "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). "Although appellate review of sentences must give due consideration to the trial court's sentence because of the special expertise of the trial bench in making sentencing decisions, Appellate Rule 7(B) is an authorization to revise sentences when certain broad conditions are satisfied." *Shouse v. State*, 849 N.E.2d 650, 660 (Ind. Ct.App.2006), *trans. denied* (citations and quotation marks omitted).

■■■ As an initial matter, Jenkins contends that his eight-year sentence, although six years of it suspended and only two of those suspended to probation, must be treated as a "maximum" sentence for purposes of Appellate Rule 7(B). This is a question that has generated a split of opinion on this court, namely, whether in this context a fully executed sentence is equivalent to a sentence of equal length but partially suspended to probation. We must respectfully disagree with those of our colleagues who have concluded that the two are equivalent for purposes of an appropriateness challenge.

Common sense dictates that less executed time means less punishment. That is why almost any defendant, given the choice, would gladly accept a partially suspended sentence over a fully executed one of equal length. We agree with Judge Kirsch that "[a] year is, indeed, a year, but a suspended sentence is not the same as an executed sentence[.]" *Eaton v. State*, 825 N.E.2d 1287, 1291 (Ind.Ct.App.2005) (Kirsch, C.J., dissenting) (*disapproved of on other grounds by Childress v. State*, 848 N.E.2d 1073, 1077 n. 2 (Ind.2006)). Most would agree that prison is worse than probation, and it is simply not realistic to consider a year of probation, a year in community corrections, and a year in prison as equivalent.

Of course, we acknowledge that probations can be, and often are, revoked, and that the result of those revocations frequently is a fully executed sentence. We agree that "[i]mposition of a suspended sentence leaves open the real possibility that an individual will be incarcerated for some period before being released from his penal obligation." *Weaver v. State*, 845 N.E.2d 1066, 1072 n. 4 (Ind.Ct.App.2006), *trans. denied.* While this is true, as far as it goes, this view seemingly fails to take into account that whether the suspended time is eventually served *depends entirely on the defendant.* The "real possibility" that the suspended portion of a sentence will be ordered executed is not random or

dependent on the whim of a judge; a defendant can ensure that it will never become reality simply by abiding by the terms of his probation. In a sense, an eight-year sentence with two years executed and two years suspended to probation is a two-year sentence with an option for two more, the exercise of which option is entirely up to the defendant.[4] In the end, we believe all would agree that, all else being equal, a two-year executed sentence is less harsh than an eight-year executed sentence. It is just as clear that an eight-year sentence with six years suspended, two of those to probation, lies somewhere in between, and we treat it as such for purposes of Rule 7(B) review.

Although we are unaware of any Indiana Supreme Court cases directly on point, we believe that our position is fully consistent with its jurisprudence. In *Hole v. State,* 851 N.E.2d 302, 304 n. 4 (2006), the Court indicated that a discretionary placement in either community corrections or the Department of Correction would be subject to appropriateness review. *Hole,* then, clearly stands for the proposition that the particulars of a sentence can be just as relevant as its length when it comes to Rule 7(B) review. If the difference between prison and community corrections is relevant under 7(B), then it follows that so is the difference between executed time and probation.

Moreover, we believe that *Mask v. State,* 829 N.E.2d 932, 936 (Ind.2005), in which the Indiana Supreme Court wrote that "[a] suspended sentence differs from an executed sentence only in that the period of incarceration is delayed unless, and until, a court orders the time served in prison[,]" is distinguishable. First, the holding is limited to the context of the case, which was the question of whether suspended time must be included in calculating the longest allowable aggregate sentence under Indiana Code section 35–50–1–2(c). *Id.* ("Incarceration *in the context of subsection (c)* does not mean the period of executed time alone.... We hold that any period of a suspended sentence must be included *when calculating the maximum aggregate sentence under Indiana Code § 35–50–1–2(c)."* (emphases added)). Moreover, Mask was decided in a completely different context, one governed by statute and in which the length of the sentence was the only relevant consideration. As *Hole* makes clear, however, length is not the only relevant consideration in appropriateness analysis.

Finally, we agree with Judge Sullivan that *Buchanan v. State,* 767 N.E.2d 967, 973 (Ind.2002), does not stand for the proposition that "sentence" and "punishment" are synonymous, thereby compelling us to treat a sentence of maximum length, fully executed or not, as representing maximum punishment. *See Cox v. State,* 792 N.E.2d 898, 906 (Ind.Ct.App. 2003) (Sullivan, J., dissenting). In *Buchanan,* that question was not before or decided by the Court, and, because the sentence imposed was both the longest allowed and ordered fully executed, the two terms *were* interchangeable, at least in that case. We find, however, no indication anywhere in *Buchanan* that the Court intended to equate "sentence" with "punishment" in all contexts and cases. To summarize, our view is that, for purposes of Rule 7(B) review, a maximum sentence is not just a sentence of maximum length, but a *fully executed* sentence of maximum

---

**4.** We do not mean to suggest that living under the terms of probation is not a hardship. Even though probationers are "free," the threat of revocation may be seen by some as the sword of Damocles, an ever-present threat that prevents them from fully enjoying their "freedom." Even so, we are convinced that most would still prefer probation to incarceration.

length. Anything less harsh, be it placement in community corrections, probation, or any other available alternative to prison, is simply not a maximum sentence.

 Turning to the case before us, Jenkins contends that the nature of his offenses was benign, noting that he possessed a mere 0.2098 grams of cocaine more than the 3 grams required for his enhanced Class C felony conviction. We cannot agree, however, that Jenkins's offenses were benign. First, the record strongly suggests that Jenkins was, in fact, involved in dealing the illegal drugs in his possession: the vast majority of the cocaine in his possession was found in "[t]en tied plastic bag corners[,]" a common method of packaging cocaine for sale.[5] Ex. Volume p. 5. Moreover, Officer Carrier injured his knee pursuing Jenkins, an injury that required a visit to the hospital. The nature of Jenkins's offenses fully justifies his sentence.

As for Jenkins's character, the record indicates that he is a convicted drug dealer who has not chosen to reform himself, despite his numerous contacts with the criminal justice system. Jenkins has previous convictions for Class B felony dealing in cocaine or narcotic, Class D felony cocaine possession, and Class D felony marijuana or hashish possession. Jenkins was placed on probation following his dealing in cocaine or narcotic conviction, but his probation was revoked. We would also note that Jenkins has apparently been arrested on five other occasions. So, while Jenkins's record of criminal convictions is far from the worst we have encountered, his moderate record of criminal convictions and other contacts with the criminal justice system have not convinced him to reform himself. Jenkins contends that he should be given credit for his efforts to address his alleged substance abuse problem, but the sincerity of these efforts is somewhat undercut by the "few instances where [he] had dirty drops" since the case began. Tr. p. 74. In summary, although we conclude that Jenkins is far from the "worst of the worst," the nature of his offenses and his character justify his eight-year sentence when one considers that six of those years were suspended, two to probation.

The judgment of the trial court is affirmed in part and reversed in part.

CRONE, J., and BROWN, J., concur.

---

5. We note that possession of greater than 3 grams of cocaine with intent to deliver is a Class A felony, punishable by a sentence of up to fifty years of incarceration. *See* Ind.Code §§ 35–48–4–1(b)(1) (2007); 35–50–2–4 (2007).