## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 21 2017, 9:20 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Patrick Magrath
Alcorn Sage Schwartz & Magrath, LLP
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Christina D. Pace
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Steven Joseph Rekowski, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff* | June 21, 2017 <br><br> Court of Appeals Case No. 15A01-1612-CR-2777 <br><br> Appeal from the Dearborn Circuit Court <br><br> The Honorable James D. Humphrey, Judge <br><br> Trial Court Cause No. 15C01-1601-F1-001 |

**Pyle, Judge.**

# Statement of the Case

Steven Rekowski ("Rekowski") appeals the sentence imposed after he pled guilty to three counts of Level 1 felony child molesting,[1] three counts of Level 5 felony child exploitation,[2] and one count of Level 6 felony performing sexual conduct in the presence of a minor.[3] Rekowski specifically argues that his sentence is inappropriate in light of the nature of the offenses and Rekowski's character. Because Rekowski has failed to persuade us that his sentence is inappropriate, we affirm the sentence.

We affirm.

# Issue

The sole issue for our review is whether Rekowski's sentence is inappropriate.

# Facts

On December 31, 2015, Rekowski went to S.B.'s ("S.B.") house to do some laundry. Rekowski and S.B. had known each other for eight or nine years. When Rekowski arrived at S.B.'s house, S.B. was getting ready to go in to work for an hour to do some paperwork. She planned to take her daughters, four-year-old A.R. ("A.R") and ten-year-old J.R. ("J.R.") with her. When the two

---

[1] IND. CODE § 35-42-4-3.

[2] I.C. § 35-42-4-4.

[3] I.C. § 35-42-4-5.

girls asked if they could stay home, Rekowski offered to watch them while S.B. was gone. When S.B. returned home about an hour later, Rekowski laughed and showed her a picture of A.R., who had fallen asleep against the wall in her room. Rekowski said he took the pictures "because it was funny how she fell asleep." (Tr. 81).

[4] The following day, Rekowski and Stephanie Weaver ("Weaver") stopped by S.B.'s house. Weaver told Rekowski to tell S.B. what he had done the night before. Rekowski told S.B. that "he [had taken] advantage of a situation," and Weaver began showing S.B. photos and videos that she had found on Rekowski's phone. (Tr. 77). The photos and videos showed Rekowski molesting A.R. and J.R. Specially, there were photos and videos of Rekowski placing his finger and tongue into A.R.'s vagina as well as photos and videos of Rekowski placing his penis into a sleeping or unconscious J.R.'s mouth. Rekowski subsequently ejaculated into J.R.'s mouth and then took pictures of J.R. with semen on her lips and face.

[5] After seeing the photos and videos, S.B. contacted the police, who took Rekowski to the police station for questioning. Rekowski admitted that he had molested A.R. and J.R. but insisted that the molestations were "a first-time thing." (Ex. at 57). Police officers subsequently conducted a search of Rekowski's apartment where they found muscle relaxing pills, children's toys, sex toys, gels, lubricants, and female children's underwear. The officers also found numerous multimedia devices, including cell phones and computers. Sergeant Matthew Simmons ("Sergeant Simmons") from the Indiana State

Police Cyber Crimes Unit forensically examined eleven of the devices, which included 846,122 images and/or video files. Sergeant Simmons classified approximately 272,687 of those files. Ten percent of those files could be classified as child pornography, and 84 percent of the files could be classified as child erotica.[4] Approximately 9,000 of the files were files frequently possessed by those involved in child pornography. Sergeant Simmons also located pictures and videos of Rekowski engaged in sexual acts with children.

[6] Police officers discovered that two of the children in the photographs were eight-year-old M.F. ("M.F.") and seven-year-old A.B. ("A.B."), who are the daughters of T.B. ("T.B."). T.B. and her husband had taken Rekowski "into [their] home when he was down on his luck, [they] fed and housed him and helped him to [the] best of [their] ability [even though they] didn't have much [themselves] and . . . asked for nothing in return." (Tr. 90). Pictures and videos found on Rekowski's phone showed him playing a "game" where he held M.F. upside down and coerced her to pull down his pants, grab and touch his erect penis, and place it in her mouth. (Tr. 58). A.B. watched the "game," and in the video, both of the girls were laughing. (Tr. 58). There were additional photographs on the multimedia devices that revealed Rekowski molesting unidentified children.

---

[4] Child erotica "can be classified as things that don't go into the realm of child pornography such as modeling pictures of children in lingerie, bathing suits, demeanor such as that or images that are showing a naked child, however, it is unable to determine what their age might be." (Tr. 103).

[7]    The State charged Rekowski with multiple offenses, and he eventually pled guilty to three counts of Level 1 felony child molesting for molesting A.R., J.R., and M.F.; three counts of Level 5 felony child exploitation for acts involving A.R., J.R., and M.F.; and one count of Level 6 felony performing sexual conduct in the presence of a minor. At the sentencing hearing, S.B. testified as follows regarding the impact of the molestations on her family:

> After this happened I nearly lost my job from staying home because if they weren't at work with me I didn't go to work. . . . Then I eventually just quit because they just couldn't be there all the time, every day. I just don't trust anybody to be around them anymore. . . . It's the worst thing that could ever happen. I feel like a terrible person that . . . I had to run to work for an hour and something like this could have happened. I felt like [it was] my fault that I did something wrong for letting somebody I kn[e]w for eight (8) or nine (9) years sit with them for an hour.

(Tr. 82). In addition, the following letter from T.B. was read into the record of the sentencing hearing:

> This monster molested my little girls, he did things I cannot even fathom . . . a grown man even thinking about doing to a child. He violated my babies. . . . They should be playing and enjoying life but instead they are drug from appointment to appointment to try and put those pieces back together again. This is not what a child should be doing or have to go through. They had their innocence ripped away from them for what? For this sick monster's self-desires. He took their childhood away from them forever. My children have been through so much already that no child should ever have to go through. . . .

(Tr. 90).

[8] Also at the sentencing hearing, the State pointed out that Rekowski was facing a maximum sentence of one hundred seventy and one-half (170 ½) years and that "he deserve[d] every day of this sentence." (Tr. 160). The State further argued that "in [its] years of experience, [Rekowski was] probably the worst child molester that [it had] ever seen." (Tr. 160). The State pointed out that Rekowski did not just molest the children, he photographed the molestations. Rekowski responded that he was not the "worst of the worst when the worst possible acts didn't occur . . . ." (Tr. 165). According to Rekowski, there were some sexual acts that did not occur in this case that would have been "worse than what happened in this case." (Tr. 164).

[9] In its written sentencing order, the trial court found four aggravating circumstances. First, the trial court noted that Rekowski has a criminal history that includes five felony convictions, eight misdemeanor convictions, and three probation violations. The trial court explained that both video and photographic evidence revealed that Rekowski committed sexual offenses against the four victims in the case as well as five to ten additional children. Second, the trial court found that the nature and circumstances of the crimes also constituted an aggravating factor. According to the trial court, the offenses included children who were substantially younger than the statutory requirement to be under the age of fourteen for the enhancement to a Level 1 felony. The trial court further explained that "[Rekowski's] lack of respect and callousness towards these young children is appalling. [His] treatment of small children as sexual toys cannot be tolerated in a civilized society. It is hard to

imagine a more disgusting display of human behavior." (Sentencing Order at 6). Third, the trial court found that the effects of the crime was also an aggravating factor. The trial court explained that the effect of the harm to the children may not be known for years; however, it was clear that the parents of the children had been emotionally devastated. Fourth, the trial court found that Rekowski's future dangerousness was also an aggravating factor. According to the trial court, Rekowski's actions showed that he was a clear, present, and continuing danger to children. The trial court considered Rekowski's guilty plea to be a slight mitigating factor.

[10] After reviewing the aggravating and mitigating factors, the trial court sentenced Rekowski to fifty (50) years for each of the Level 1 felony convictions; six (6) years for each of the Level 5 felony convictions; and two and one-half (2 ½) years for the Level 6 felony conviction. The trial court further ordered all of the sentences to run consecutive to each other for a total executed sentence of one-hundred and seventy and one-half (170 ½) years. Rekowski now appeals his sentence.

# Decision

[11] Rekowski's sole argument is that his sentence is inappropriate. Indiana Appellate Rule 7(B) provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender. The defendant bears the burden of persuading this Court that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind.

2006). Whether we regard a sentence as inappropriate turns on the "culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008).

[12] When determining whether a sentence is inappropriate, we acknowledge that the advisory sentence is the starting point the Legislature has selected as an appropriate sentence for the crime committed. *Childress*, 848 N.E.2d at 1081. Here, Rekowski pleaded guilty to three Level 1 felonies, three Level 5 felonies, and one Level 6 felony. The sentencing range for a Level 1 felony is from twenty (20) to fifty (50) years, with an advisory sentence of thirty (30) years. I.C. § 35-50-2-5. The sentencing range for a Level 5 felony is from one (1) to six (6) years, with an advisory sentence of three (3) years. I.C. § 35-50-2-6. The sentencing range for a Level 6 felony is from six (6) months to two and one-half (2 ½) years, with an advisory sentence of one (1) year. I.C. § 35-50-2-7. The trial court sentenced Rekowski to the maximum sentence for each conviction and ordered the sentences to run consecutively, for a total executed sentence of one hundred and seventy and one-half (170 ½) years.

[13] With regard to the nature of the offenses, Rekowski offered to care for A.R. and J.R. while their mother went to work. When he got the young girls alone, Rekowski placed his tongue and finger into four-year-old A.R.'s vagina and took photos and videos of his actions. Rekowski also placed his penis in J.R.'s mouth, ejaculated, and then took pictures of his semen on J.R.'s face and mouth. In addition, Rekowski took photos and videos of these acts. Further,

Rekowski abused the trust of friends who had given him a place to stay when he was "down on his luck" by playing sexual games with their seven- and eight-year-old daughters. (Tr. 190). Specifically, photos and videos showed Rekowski playing a "game" where he held M.F. upside down and coerced her to pull down his pants, grab and touch his erect penis, and place it in her mouth. (Tr. 58). M.F.'s sister A.B. watched the "game," and in the video, both of the girls were laughing. (Tr. 58). While Rekowski claims that these instances of molestation were not the worst that could have occurred, we find that the self-preserved evidence of sexual abuse contradicts his self-serving argument. The nature of Rekowski's offenses demonstrates the likelihood that the psychological damage to his victims will likely "be more devastating than physical injury. This is especially true of children of tender years when they are victimized in the manner described in this case." *Lasley v. State*, 510 N.E.2d 1340, 1342 (Ind. 1987).

[14] With regard to his character, Rekowski has an extensive criminal history that includes five felony convictions, eight misdemeanor convictions, and three probation violations. Rekowski's former contacts with the law have not caused him to reform himself. *See Jenkins v. State*, 909 N.E.2d 1080, 1086 (Ind. Ct. App. 2009), *trans. denied*. In addition, Rekowski's multi-media devices included child pornography and erotica, including images that he produced as he was molesting children. Rekowski further abused positions of trust with friends and neighbors by offering to care for their children and then molesting those children while they were in his care.

Given the multiple children molested here and after due consideration of the trial court's decision, Rekowski has failed to persuade this Court that his sentence is inappropriate in light of the nature of the offenses and the character of the offender. *See, e.g., Serino v. State*, 798 N.E.2d 852, 857 (Ind. 2003) (noting that "when the perpetrator commits the same offense against two victims, enhanced and consecutive sentences seem necessary to vindicate the fact that there were separate harms and separate acts against more than one person"). *See also Mitchem v. State*, 685 N.E.2d 671, 680 (Ind. 1997) (explaining that the "basis for the gross impact which consecutive sentences may have is the moral principle that each separate and distinct criminal act deserves a separately experienced punishment").

Affirmed.

May, J., and Brown, J., concur.