## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Leanna Weissmann
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Christina D. Pace
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jason Ell,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

October 4, 2017

Court of Appeals Case No.
69A01-1704-CR-822

Appeal from the
Ripley Superior Court

The Honorable
Jeffrey Sharp, Judge

Trial Court Cause No.
69D01-1606-F6-137

**Kirsch, Judge.**

[1] Jason Ell ("Ell") appeals his convictions, following a jury trial, for Level 6 felony domestic battery in the presence of a child[1] and Level 6 felony criminal confinement.[2] He raises the following two restated issues:

> I. Whether the State presented sufficient evidence to convict him; and

> II. Whether his sentence is inappropriate in light of the nature of the offense and the character of the offender.

[2] We affirm.

## Facts and Procedural History

[3] In June 2016, Ell was living with his then-girlfriend, K.P. and her two young children, ages five and one, in a mobile home in Ripley County, Indiana. On the evening of June 28, Ell was at work, and at approximately 8:30 p.m., K.P. put the children to bed in their bedroom, which was close to the bedroom that K.P. and Ell shared. At some point that evening, K.P. learned through her cousin's Facebook post that her grandmother was in the hospital, and, after that, K.P. spent time on her phone checking for updates on her grandmother's status. When Ell arrive home from work around 10:30 p.m., K.P. was on the bed, still focused on her phone. Ell greeted K.P., showered, made himself some food, and made mixed alcoholic drinks for K.P. and himself; thereafter, he sat

---

[1] *See* Ind. Code § 35-42-2-1.3(b)(2).

[2] *See* Ind. Code § 35-42-3-3(a).

on his side of the bed and watched one or more movies on his computer, while she was on the other side of the bed looking at her phone. There was little conversation between them.

[4] Approximately two and one-half hours passed, and Ell was frustrated that K.P. was on her phone so much. He grabbed it out of her hand and threw it across the room; it hit a bookshelf and broke. Ell climbed on top of K.P., grabbed her arms and held them over her head, pinning her down. He squeezed her arms, and she yelled. At some point, K.P. bit Ell so that she could escape from his grasp, and he hit her on the right side of her face.[3] K.P.'s five-year-old daughter was standing at a baby gate in the bedroom doorway and was yelling.

[5] When K.P. bit Ell, he released his grasp, and she ran to her uncle's nearby mobile home, banging at his door and windows at approximately 2:00 a.m. Her uncle, James Parks ("Parks"), let K.P. inside, and she used his cell phone to call 911. Indiana State Trooper Nicholas Albrecht ("Trooper Albrecht") responded to the dispatch call regarding the report of domestic violence and arrived within minutes of the 911 call. He knocked on the door of Ell's residence. Ell answered and spoke to Trooper Albrecht, acknowledging that he threw K.P.'s phone and pushed her head away when she bit him. Another officer stayed with Ell, as Trooper Albrecht spoke to K.P., who told Trooper Albrecht that Ell was angry at her for being on her cell phone, and he threw her

---

[3] Evidence was presented at trial that Ell was aware that K.P. has a shunt in her head and that contact to her head should be avoided. *Tr. Vol. II* at 33, 178-79.

phone and held her down, so she bit him. She also told Trooper Albrecht that, during the altercation, she saw her five-year-old daughter standing in the doorway.

[6] On June 29, 2016, the State charged Ell as follows: Count I, Level 6 felony domestic battery in the presence of a child; Count II, Level 6 felony criminal confinement; and Count III, Class A misdemeanor domestic battery. *Appellant's App. Vol. II* at 15-17.[4] At the February 2017 jury trial, the State called as witnesses Parks, K.P., and Trooper Albrecht; Ell testified in his defense.

[7] Parks stated that he was sound asleep when K.P.'s loud banging on his windows woke him up at around 2:00 a.m. He described that she was "crying hysterically" and calling his name, and he let her inside. *Tr. Vol. II* at 36. His kitchen light was turned on, and he saw that K.P. had a red mark on her face and swelling around her eye. *Id.* at 38, 41. K.P. used Parks's cell phone to call 911.

[8] Trooper Albrecht testified that he arrived within minutes of the dispatch call, and, upon arriving at the scene, he spoke to Ell, who told him that he was upset that K.P. was on her phone and ignoring him, so he took her phone and threw it. Ell said that when he threw K.P.'s phone, she bit him, and he pushed her head away. Trooper Albrecht observed bite marks on Ell. Trooper Albrecht thereafter spoke to K.P. at her uncle's residence. She was crying and told

---

[4] The State also charged, but dismissed, Count IV, Class B misdemeanor battery. *Appellant's App. Vol. 2* at 3.

Trooper Albrecht that Ell had held her down and was yelling at her. She told him that she bit Ell in order to get him off of her, and then he hit her in the head. K.P. told Trooper Albrecht that she saw her daughter standing in the bedroom doorway during the altercation. Trooper Albrecht noticed that K.P.'s hair was messed up, she had red marks on both arms, swelling on her right eye, and swelling to her forehead. *Tr. Vol. II* at 121. Trooper Albrecht testified that Ell's story of pushing K.P. "didn't add up" because it was not consistent with her injuries. *Id*. at 125, 144.

[9] K.P. testified that she was upset about learning that her grandmother was in the hospital, but she did not tell Ell about the situation when he got home because "[h]e didn't ask[,]" and she felt he did not like hearing about her family. *Id*. at 60. She could tell that he was becoming frustrated with her being on her phone. She testified that he got angry, grabbed her phone, and "flung it" so that it hit the bookshelves and broke apart. *Id*. at 61. She testified that he got on top of her and used force to hold her down, which scared her. *Id*. at 63. They yelled at each other, and when he did not let her go as she asked, she bit him on his arm, and he "backhanded" her on the side of her face. *Id*. at 64. She stated that no part of the situation felt sexual to her. After Ell hit K.P., he released her, and she ran out of the house, saying she was going to call the police. During the altercation in the bedroom, K.P. saw her five-year-old daughter in the doorway, yelling and looking into the room.

[10] While being cross-examined, K.P. acknowledged that she had exaggerated the situation to the 911 operator when she reported that Ell had thrown her down

on the floor, but testified that "most of" her statements to police were correct. *Id.* at 80. She acknowledged that, at a prior hearing, she had asked that the trial court drop the then-existing protective order against Ell because it was her desire at that time to have Ell move back into the home. K.P. shared that she had been in an abusive relationship for seven years with another man and that Ell had never been physically violent with her in the past, but had made statements to her that "made [her] stay with him because it scared [her]." *Id.* at 90.

[11] Ell testified to his version of events, which was that he was not angry that K.P. was on the phone, did not know about the situation with her grandmother's health, but was aware that her grandfather had recently died, and therefore he was "giving her some space[.]" *Id.* at 151, 152. He testified that he watched a movie, and tried every so often to initiate conversation, but she did not respond. When K.P. eventually set down her phone, he "tr[ied] to start some kind of sexual contact," and he tossed the phone off the end of the bed so it would not get broken during sex. *Id.* at 154-55. He positioned himself on top of her, and when he leaned in to kiss her, she bit him, and, reactively, he pushed her head away. *Id.* at 157. He said he "never saw it coming" and became "livid" that she bit him. *Id.* at 158. Ell said that he began yelling and screaming and does not know at what point the children woke up. On rebuttal, Trooper Albrecht testified that Ell's testimony, stating that he was not upset with K.P. at the time that he moved her phone, was inconsistent with what Ell had told Trooper

Albrecht on the night in question, which was that he took her phone from her because he was upset with her for ignoring him. *Id.* at 180.

[12] The jury found Ell guilty as charged, and the trial court merged the Class A misdemeanor domestic battery into the Level 6 felony domestic battery in the presence of a child less than sixteen years of age. *Appellant's App. Vol. II* at 5, 172; *Tr. Vol. III* at 21-22. At sentencing, the trial court found as aggravating factors: (1) Ell's criminal history; (2) his violations of conditions of bond, including new charged offenses and violation of a no-contact order; and (3) his inability to follow rules and regulations. *Tr. Vol. III* at 23-25. It found as mitigating: (1) Ell has been employed much of his adult life; (2) he served in the Marine Corps, but was discharged for smoking marijuana; and (3) he has a substance abuse history, although he was removed from Indiana Department of Correction ("DOC") treatment due to his failure to follow rules. *Id.* at 25. The court noted "an underlying theme here with Mr. Ell and his inability to follow rules and regulations, whether that be the Indiana Criminal Code, the conditions of bond, conditions of probation, . . . the United States Marine Corp[s]'s regulations, or rules of the [DOC.]" *Id.* The trial court sentenced Ell to two and one-half years with 180 days suspended to probation for the Level 6 felony domestic battery in the presence of a child conviction, and it imposed the same sentence for the Level 6 felony criminal confinement conviction, ordering the two sentences to run concurrently. *Id.* at 26-27; *Appellant's App. Vol. II* at 170, 173. Ell now appeals.

# Discussion and Decision

## I. Sufficiency of the Evidence

[13] Ell argues that the evidence was insufficient to support his convictions for Level 6 felony domestic battery in the presence of a child and Level 6 felony criminal confinement. When reviewing the sufficiency of evidence to support a conviction, we do not reweigh the evidence or assess the credibility of the witnesses. *Boggs v. State*, 928 N.E.2d 855, 864 (Ind. Ct. App. 2010), *trans. denied*. We consider only the evidence and reasonable inferences supporting the conviction. *Williams v. State*, 798 N.E.2d 457, 459 (Ind. Ct. App. 2003). We will affirm unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Boyd v. State*, 889 N.E.2d 321, 325 (Ind. Ct. App. 2008), *trans. denied*. It is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id*. "A conviction can be sustained on only the uncorroborated testimony of a single witness, even when that witness is the victim." *Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012).

[14] To convict Ell of Level 6 domestic battery as charged, the State was required to prove beyond a reasonable doubt that Ell knowingly or intentionally touched K.P., a family or household member, in a rude, insolent, or angry manner resulting in bodily injury to K.P., and he committed the offense in the physical presence of a child less than sixteen years of age, knowing that the child was present and might be able to see or hear the offense. Ind. Code § 35-42-2-1.3(b)(2); *Appellant's App. Vol. II* at 15. To convict Ell of Level 6 felony criminal confinement as charged, the State was required to prove that Ell confined K.P.

without her consent by holding her to the bed in their bedroom. Ind. Code § 35-42-3-3(a); *Appellant's App. Vol. II* at 16.

[15] Ell asserts on appeal that his convictions "hinged on [K.P.]'s version of events" and that her testimony was incredibly dubious. *Appellant's Br.* at 8. In support, Ell reminds us that K.P. conceded that she exaggerated some details of the situation to the 911 dispatch operator and in her deposition, and, at one stage in the proceedings, K.P. asked for the then-existing protective order to be removed so that Ell could return home. He also notes that her criminal background included convictions for dishonest acts, to which she admitted at trial.

[16] Under the "incredible dubiosity rule," this court may impinge upon the jury's responsibility to judge the credibility of witnesses only when confronted with inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony. *Manuel v. State*, 971 N.E.2d 1262, 1271 (Ind. Ct. App. 2012). If a sole witness presents inherently improbable testimony, and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed. *Id.* Application of this rule is rare, and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it. *Id.* The rule applies only when a witness contradicts himself or herself in a single statement or while testifying; it does not apply to conflicts between multiple statements. *Id.* Inconsistencies in the testimonies of two or more witnesses go to the weight of the evidence and do not make the evidence "incredible" as a matter of law. *Id.*

[17]     We reject Ell's claim that K.P.'s testimony was incredibly dubious. She told the 911 operator that Ell held her down, so she bit him, and then he hit her. She told Trooper Albrecht that same information when he arrived on the scene, and she told the jury that same version of events at trial. She also told her uncle, Parks, that Ell had held her down and hit her. There is nothing inherently improbable in K.P.'s testimony, and, further, it was corroborated by Trooper Albrecht's observations. That is, K.P. testified that Ell held her down, and "backhanded" her face when she bit Ell in an effort to get Ell to release K.P. from his grasp. *Tr. Vol. II* at 64. Trooper Albrecht testified that K.P. told him this same information when he arrived at the scene and spoke to her, and he testified that Ell's version of events, that he pushed K.P.'s head away, was not consistent with his observations of K.P.'s injuries. Trooper Albrecht also testified that Ell's testimony, stating he was not angry with K.P. until she bit him, was inconsistent with what Ell had told him when he arrived on the scene, which was that he was mad at K.P. for ignoring him and looking at her phone. At best, Ell's argument is a request for us to reweigh the evidence on appeal, which we cannot do. *Palacios v. State*, 926 N.E.2d 1026, 1034 (Ind. Ct. App. 2010). The State presented sufficient evidence to convict Ell of Level 6 felony domestic battery and Level 6 felony criminal confinement.

## II. Sentencing

[18]     The trial court sentenced Ell to two and one-half years with 180 days suspended to probation for the domestic battery in the presence of a child conviction and to a concurrent sentence of two and one-half years with 180 days suspended to

probation for the criminal confinement conviction. Ell argues that "[t]he trial court sentenced [] Ell to the maximum sentence" and that it is inappropriate in light of the nature of the offense and the character of the offender. *Appellant's Br.* at 11.

[19] Pursuant to Indiana Appellate Rule 7(B), this Court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Our supreme court has explained that the principal role of appellate review should be to attempt to leaven the outliers, "not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). We independently examine the nature of Ell's offenses and his character under Appellate Rule 7(B) with substantial deference to the trial court's sentence. *Satterfield v. State*, 33 N.E.3d 344, 355 (Ind. 2015).

[20] "In conducting our review, we do not look to see whether the defendant's sentence is appropriate or if another sentence might be *more* appropriate; rather, the test is whether the sentence is 'inappropriate.'" *Barker v. State*, 994 N.E.2d 306, 315 (Ind. Ct. App. 2013), *trans. denied*. "In assessing whether a sentence is inappropriate, appellate courts may take into account whether a portion of the sentence is ordered suspended or is otherwise crafted using any of the variety of sentencing tools available to the trial judge." *McFall v. State*, 71 N.E.3d 383, 390 (Ind. Ct. App. 2017). That is, Indiana courts may consider all aspects of the penal consequences found in a trial court's sentence, including whether it consists of executed time, probation, suspension, home detention, or placement

in community corrections, and whether the sentences run concurrently or consecutively. *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010). Ell bears the burden of persuading us that his sentence is inappropriate. *Barker*, 994 N.E.2d at 315.

[21] "As to the nature of the offense, the advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed." *Kunberger v. State*, 46 N.E.3d 966, 973 (Ind. Ct. App. 2015). The advisory sentence for a Level 6 felony conviction is one year, with a range of between six months and two and one-half years. Ind. Code § 35-50-2-7(b). Although Ell claims that his sentence was the maximum, this court has explained, "[A] maximum sentence is not just a sentence of maximum length, but a fully executed sentence of maximum length" and that "[a]nything less harsh, be it placement in community corrections, probation, or any other available alternative to prison, is simply not a maximum sentence." *Jenkins v. State*, 909 N.E.2d 1080, 1085-86 (Ind. Ct. App. 2009), *trans. denied*. Here, Ell's two sentences were ordered to be served concurrent with each other, and a portion of his sentence was suspended to probation; thus, he did not receive the maximum sentence, as he suggests.

[22] The nature of the offense is found in the details and circumstances of the commission of the offense and the defendant's participation. *Croy v. State*, 953 N.E.2d 660, 664 (Ind. Ct. App. 2011). Ell argues that the "physical impact here was minimal" and, therefore, the nature of the offense should "tip[] toward the lower end of the sentencing spectrum." *Appellant's Br*. at 12. The circumstances

of the offenses are that Ell was angry with K.P. for ignoring him and focusing on her phone, and consequently, he threw the phone, climbed on top of her and held her down, despite her protests to be released. K.P. bit Ell, so that he would release her, and he hit her in the face causing redness and swelling, and later, a black eye. Ell was aware that K.P. had a shunt in her head and should not receive contact to her head. Sometime during the altercation, K.P.'s five-year-old child was awakened, and stood in the doorway to Ell and K.P.'s bedroom. We are not persuaded that anything about the nature of the offense warrants a reduction in the imposed sentence.

[23] "The character of the offender is found in what we learn of the offender's life and conduct." *Croy*, 953 N.E.2d at 664. Ell's criminal history includes six misdemeanor convictions and two felony convictions, most of which related to substance abuse, such as illegal consumption of alcoholic beverage, possession of controlled substance, and operating a vehicle while intoxicated. *Tr. Vol. III* at 23; *Appellant's Confid. App. Vol. II* at 146-48. While out on bond in this case, Ell was arrested and convicted of another offense and faced other pending charges at the time of sentencing in the present action. *Tr. Vol. III* at 24; *Appellant's Confid. App. Vol. II* at 151. He has had his probation revoked at least once. Ell also violated the conditions of the no-contact order that was put in place in the current case. *Tr. Vol. III* at 24. Based on the record before us, we find that Ell's character does not warrant revision of his sentence. Accordingly, Ell has failed to carry his burden of establishing that his sentence is inappropriate in light of the nature of the offense and his character.

[24] Affirmed.

Najam, J., and Brown, J., concur.