
FILED
Sep 17 2013, 5:33 am
CLERK
of the supreme court,
court of appeals and
tax court

# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**THEODORE F. ADAMS**
**MICHAEL J. KYLE**
Baldwin Adams & Kamish
Franklin, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**AARON J. SPOLARICH**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

NATHAN K. BARKER,            )
                            )
    Appellant-Defendant,    )
                            )
       vs.           )   No. 73A01-1212-CR-575
                            )
STATE OF INDIANA,           )
                            )
    Appellee-Plaintiff.     )

APPEAL FROM THE SHELBY CIRCUIT COURT
The Honorable Charles D. O'Connor, Judge
Cause No. 73C01-1108-FA-15

**September 17, 2013**

**OPINION - FOR PUBLICATION**

**CRONE, Judge**

## Case Summary

Twenty-two-month-old J.S. died shortly after he was babysat by his mother's live-in boyfriend, Nathan K. Barker. Early in the afternoon, Barker had called J.S.'s mother ("Mother") at work and told her that J.S. had fallen off the couch. He said that he had called for an ambulance and that the paramedics had said that the child was fine. In fact, he had never called for help. Later that night, Mother called 911, and by the next morning J.S. was on life support. J.S. died later that day, and an autopsy showed that he had suffered massive brain injuries as well as injuries to his abdomen, eyes, mouth, shoulder, thigh, buttocks, and penis.

The State charged Barker with class A felony neglect of a dependent causing death, class A felony battery causing death, and class D felony neglect of a dependent. Barker agreed to plead guilty to class A felony neglect of a dependent causing death, and in exchange, the State agreed to dismiss the remaining charges and to cap the executed portion of his sentence at forty years. The court sentenced Barker to forty-five years, with forty years executed and the remainder suspended to probation, with 120 days to be served on home detention.

Barker now appeals, claiming that the trial court abused its discretion in designating aggravating and mitigating factors and in imposing a term that exceeded the forty-year cap on the executed portion of his sentence. He also claims that his sentence is inappropriate in light of the nature of the offense and his character. Finding that the imposition of 120 days of home detention causes the executed portion of Barker's sentence to exceed the forty-year

2

cap, we remand for a new sentencing order on that issue. In all other respects, we affirm his sentence.

## Facts and Procedural History[1]

Barker and Mother had dated off and on for several years. In the spring of 2011, they decided to live together in Mother's home. At 10:00 a.m. on August 1, 2011, Mother left for work, and Barker, who was unemployed, stayed at home to watch Mother's twenty-two-month-old son, J.S. Shortly after lunch, Barker called Mother at work and informed her that J.S. had fallen off of the couch, that Barker had called for an ambulance, and that the paramedics had examined J.S. and found him to be fine. There was no record of an ambulance ever being called or observed at the apartment.

When Mother returned home mid-afternoon, J.S. was sleeping, but Mother noticed that he had a bruise on his forehead and an injury on his lip. When he awoke, Mother fed him a popsicle, which he vomited. When she fed him dinner, he would not eat and vomited the juice that he drank. She went to the pharmacy to get him some nausea medicine. She checked on him around 11:30 p.m., only to discover that his fingernails were blue and he was not breathing. She immediately called 911 and performed CPR on J.S. while awaiting the paramedics.

---

[1] We note that Barker pled guilty, yet he has not included in the record before us a transcript of his guilty plea hearing. *See* Ind. Appellate Rule 9(F)(5) ("In Criminal Appeals, the Notice of Appeal must request the Transcript of the entire trial or evidentiary hearing, unless the party intends to limit the appeal to an issue requiring no Transcript."). We remind counsel of the importance of providing transcripts of proceedings below in order to facilitate our review.

J.S. was transported to a Shelby County hospital and transferred by lifeline helicopter to Riley Hospital in Indianapolis. There, J.S. was placed on life support. Early the next morning, pediatric abuse specialist Dr. Tara Harris examined J.S. Dr. Harris found significant bruising on his forehead, an injury to his jaw, and bruising under his chin. She determined that the injuries likely occurred from multiple separate impacts. J.S. also had an abrasion on his shoulder and bruising on his thigh and buttocks. His penis had multiple abrasions. His spleen was lacerated and hemorrhaging due to force to the abdomen. His pancreas also bore abnormalities consistent with trauma. He had three brain injuries: a subdural hematoma, a parenchymal hemorrhage, and a trauma-related lack of differentiation between gray and white brain matter. An autopsy listed the cause of J.S.'s death as force trauma to the head and the manner of death to be homicide.

On August 22, 2011, the State charged Barker with class A felony neglect of a dependent resulting in death, class A felony battery resulting in death, and class D felony neglect of a dependent. After several continuances, the trial date was set for September 24, 2012. Two weeks before trial, Barker entered into a plea agreement whereby he would plead guilty to class A felony neglect of a dependent causing death in exchange for the State's dismissal of the remaining counts and a forty-year cap on the executed portion of his sentence. The trial court retained discretion to set the terms and conditions of the suspended portion of his sentence.

At the December 7, 2012, sentencing hearing, the trial court accepted Barker's guilty plea, heard witness testimony, and admitted Dr. Harris's deposition. The court sentenced

4

Barker to forty-five years, with forty years executed, the balance suspended to probation, and 120 days of his probation to be served on home detention. In its sentencing order, the trial court stated, "The nature and circumstances of the crime committed are horrific and the acts committed are unimaginable which resulted in the loss of a twenty-two month old child's life." Appellant's Amended App. at 165. The order also states,

The Court finds the following aggravating factors:

1. The harm and injuries suffered by the victim were greater than the elements necessary to prove the commission of the offense. The harm suffered by the victim was beyond brutal. The victim suffered bruising on his left thigh and buttocks, multiple abrasions on his penis, bruising on his forehead, swelling in the center of his forehead, bruising to the left side of his hairline, bruising under his chin and jaw area, abrasions to his cheek, neck, both sides of his jaw line and extended down onto the neck, abrasions on the back of his left shoulder, intra abdominal injury, lacerated spleen and a red circular mark to his right chest. He suffered intra cranial hemorrhage, severe brain injury, subdural and parenchymal hematoma [on] the sides of his neck; all according to the deposition of Dr. Tara Harris. Dr. Harris's testimony indicates that these injuries had to be a result of violent shaking or an acceleration/deceleration of significant force. There is no logical way these injuries could have been sustained from falling from the couch. The Court assigns this factor significant weight.

2. Defendant was in a position of care, custody and control of the victim when this offense occurred. Defendant and the victim's mother were living together when this offense occurred; Defendant was providing child care while the victim's mother was working. Defendant violated every standard of care one could conceive. The Court assigns this factor significant weight.

3. Defendant had the opportunity to seek medical assistance for the victim and did not do so; Defendant then lied to the child's mother telling her paramedics had been called and that the child was okay. The Court assigns this factor significant weight.

This Court finds the following mitigating factor:

5

1.    Defendant's family has a history of Huntington's disease. Defendant cared for his ailing father and watched his father suffer and die from this disease. Other family members have also died as a result of this disease. This was a traumatic experience for Defendant who does not know if he has the disease. The Court assigns this factor moderate weight.

*Id*. at 166-67.

Barker now appeals. Additional facts will be provided as necessary.

**Discussion and Decision**[2]

*I. Aggravating and Mitigating Circumstances*

Sentencing decisions rest within the sound discretion of the trial court, and as long as a sentence is within the statutory range, it is subject to review only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Robinson v. State*, 894 N.E.2d 1038, 1042 (Ind. Ct. App. 2008). The trial court sentenced Barker to a forty-five-year term for his class A felony conviction, which carries a sentencing range of twenty to fifty years. Ind. Code § 35-50-2-4. Thus, his sentence is within the statutory range, and we review it for an abuse of discretion.

In its sentencing statement, the trial court cited only one mitigator: Barker's family history of Huntington's disease. Barker contends that the trial court abused its discretion in

---

[2] Barker claims that in its brief, the State uses disrespectful language aimed at insulting opposing counsel. We remind counsel that the purpose of appellate briefs is to present this Court with concise arguments supported by statutory law, case law, and the record. Ind. Appellate Rule 46(A)(8). "Invectives are not argument and have no place in legal discussion." *Pittsburgh, C., C. & St. L.Ry. Co. v. Muncie & P. Traction Co.*, 166 Ind. 466, 77N.E. 941, 942 (1906).

6

failing to consider his guilty plea and remorse as mitigating circumstances. One way that a trial court may abuse its discretion is if the sentencing statement omits reasons that are clearly supported by the record and advanced for consideration. *Anglemyer*, 868 N.E.2d at 491. The relative weight or value assignable to mitigators and aggravators is not subject to review for abuse of discretion. *Id.* The trial court is not obligated to accept the defendant's argument concerning what constitutes a mitigating factor. *Healey v. State*, 969 N.E.2d 607, 616 (Ind. Ct. App. 2012), *trans. denied.* Moreover, if the trial court does not find the existence of a mitigator after it has been argued by counsel, the court is not obligated to explain why it found the circumstance not to be mitigating. *Anglemyer*, 868 N.E.2d at 493.

In arguing that the trial court improperly ignored his guilty plea, Barker cites the lengthy witness list, claiming that his plea relieved the State of the burden of having to litigate a case of such magnitude that "would have taken an extreme emotional, physical, and fiscal toll on all parties associated with it." Appellant's Br. at 5. "A guilty plea is not necessarily a mitigating factor where the defendant receives substantial benefit from the plea or where evidence against the defendant is so strong that the decision to plead guilty is merely pragmatic." *Amalfitano v. State*, 956 N.E.2d 208, 212 (Ind. Ct. App. 2011), *trans. denied* (2012). "A plea's significance is reduced if it is made on the eve of trial." *Caraway v. State*, 959 N.E.2d 847, 853 (Ind. Ct. App. 2011), *trans. denied* (2012).

Here, Barker was charged in August 2011. He requested and received continuances over the six months that followed. At a pretrial conference on August 30, 2012, Barker gave no indication of any intent to plead guilty. He pled guilty on September 11, 2012, just two

7

weeks before his scheduled trial date. By this time, witnesses had been served, and the State had completed the majority of its trial preparation. Simply put, Barker held out, and when he faced a looming trial with substantial evidence against him, he made a pragmatic decision to plead guilty.

Moreover, Barker received a substantial benefit from his plea in the form of two dismissed felony counts, one of which was a class A felony, and a cap on his executed sentence that decreased his prison exposure by at least ten years. Contrary to Barker's suggestion, the class D felony charge was independently sustainable based on his failure to seek treatment after inflicting the injuries upon J.S. that served as the basis for the class A felony conviction. We find no abuse of discretion concerning the trial court's treatment of Barker's guilty plea.

As for Barker's remorse, the trial court observed his demeanor firsthand throughout the proceedings and was therefore in a better position to evaluate his sincerity or lack thereof. *Sharkey v. State*, 967 N.E.2d 1074, 1079 (Ind. Ct. App. 2012). The trial court stated at sentencing that it had read and considered letters written by J.S.'s family members and those written in favor of Barker. Barker's own letter is a two-page, handwritten letter in which he spends about half a page apologizing and the remainder focusing on his family history of Huntington's disease, his fear of having the disease, and its possible contributing role in the events surrounding J.S.'s death. The trial court read the letter, considered its contents, and found his family history of Huntington's disease as a mitigating circumstance. The trial court did not overlook Barker's apology; the court simply did not find it to be a significant

mitigating circumstance. *See Phelps v. State*, 969 N.E.2d 1009, 1020 (Ind. Ct. App. 2012) ("A trial court is under no obligation to accept a defendant's alleged remorse as a mitigating circumstance."), *trans. denied*. We find no abuse of discretion concerning the trial court's treatment of Barker's remorse.

Barker also contends that the trial court improperly designated an element of his offense as an aggravator. In *Pedraza v. State*, 887 N.E.2d 77 (Ind. 2008), our supreme court stated that based on the 2005 changes to Indiana's sentencing scheme, the consideration of a material element of a crime as an aggravator "is no longer an inappropriate double enhancement." *Id*. at 80. Thus, to the extent that the trial court may have considered an element of Barker's offense as an aggravator, it did not abuse its discretion.

## II.  *Home Detention*

"If [a] court accepts a plea agreement, it shall be bound by its terms." Ind. Code § 35-35-3-3(e). Barker contends that the trial court violated the plea agreement's forty-year cap on his executed sentence by ordering 120 days of home detention in addition to his forty-year executed sentence. "An 'executed sentence' is one that is actually served in a correctional facility, or other alternative correctional program, such as work release or home detention as opposed to a suspended sentence or sentence of probation." *Hildebrandt v. State*, 770 N.E.2d 355, 360 (Ind. Ct. App. 2002), *trans. denied*. A person on home detention must remain at his residence except to engage in certain court-approved activities:  to work or seek work, to obtain medical, psychiatric or counseling services, to attend an educational institution or program or a religious service, or to participate in work release or restitution. Ind. Code §

35-38-2.5-6(1); *Reed v. State*, 844 N.E.2d 223, 225 (Ind. Ct. App. 2006). A person who violates home detention is subject to prosecution for the crime of escape. Ind. Code § 35-38-2.5-6(2); Ind. Code § 35-44.1-3-4 (2012). Our statutes make it clear that home detention may be imposed as part of a community corrections program or as a condition of a person's probation. *Compare* Ind. Code § 35-38-2.6-4.5 (where court imposes home detention as part of community corrections program) *with* Ind. Code § 35-38-2.5-5(a) ("as a condition of probation a court may order an offender confined to the offender's home for a period of home detention"). In either case, the detainee is entitled to earn credit time. *See* Ind. Code § 35-38-2.6-6(a) ("A person who is placed in a community corrections program under this chapter is entitled to earn credit time under IC 35-50-6."); Ind. Code § 35-38-2.5-5(e) ("A person confined on home detention as a condition of probation earns credit for time served").[3]

Here, Barker concedes that the trial court sentenced him to home detention as a condition of his probation. Notwithstanding, he argues that because a detainee is now entitled to receive credit for time served on home detention, home detention must be considered executed time rather than time suspended to probation. We agree.

To say that the case law has been murky on the issue of credit time for home detainees would be an understatement. Home detention may be imposed prior to trial, as a direct placement in a community corrections program, or as part of probation. In *Capes v. State*,

---

[3] Because the statute relevant to Barker's home detention specifies "credit for time served," we will limit our discussion accordingly. Ind. Code § 35-38-2.5-5(e).

our supreme court held that the defendant's in-home detention prior to trial constituted confinement sufficient to qualify him for credit time. 634 N.E.2d 1334, 1335 (Ind. 1994), *overruled by Franklin v. State*, 685 N.E.2d 1062 (Ind. 1997). In *Franklin*, our supreme court held that an amendment to the post-conviction home detention statute evinced legislative intent that credit time could no longer be awarded to pretrial detainees. 685 N.E.2d at 1063-64. In *Purcell v. State*, our supreme court held that the trial court erred in failing to give the defendant 690 days' credit for the time that he actually served on home detention pursuant to a direct placement in a community corrections program. 721 N.E.2d 220, 223-24 (Ind. 1999). *Purcell* overruled *Franklin*, but only as to *Franklin*'s holding that the applicable statute prohibited a defendant serving a direct home detention placement as part of community corrections from earning credit for time served. *Id*. In a footnote, the *Purcell* court emphasized that it had revisited the question of credit time for pretrial home detainees and concluded that a trial court is within its discretion to deny a defendant credit toward his sentence for pretrial home detention time served. *Id*. at 224 n.6.

The case most procedurally similar to Barker's is *Antcliff v. State*, in which another panel of this Court addressed the issue of whether the trial court exceeded a six-year cap on the executed sentence contained in the defendant's plea agreement when it ordered that he serve six years in the Department of Correction ("DOC"), followed by home detention as a condition of his probation. 688 N.E.2d 166, 168 (Ind. Ct. App. 1997). In concluding that Antcliff's home detention did not amount to confinement in the sense of imprisonment or executed time, the Court relied on the fact that at that time, a person placed on home

11

detention as part of his probation was not statutorily entitled to credit time. *Id*. In 2001, the legislature responded by amending Indiana Code Section 35-38-2.5-5 by adding subsection (e), specifically entitling the detainee serving home detention as part of his probation to earn credit for time served. When a statute mandates credit time, the trial court does not have discretion in awarding or denying such credit. *Lewis v. State*, 898 N.E.2d 1286, 1290 (Ind. Ct. App. 2009), *trans. denied*.[4] Whether home detention is imposed via a direct placement in a community corrections program or as a condition of probation, its accompanying statutory requirement that the detainee receive credit time militates toward counting it as part of the *executed* portion of his sentence. This position is further buttressed by the statute's provision concerning a noncompliant detainee's exposure to prosecution for felony *escape*, the very nature of which connotes confinement from which the errant detainee has fled. Ind. Code § 35-38-2.5-6(2). *See* Ind. Code § 35-44.1-3-4 (2012) (defining felony escape as intentionally fleeing from lawful detention or knowingly or intentionally violating a home detention order). *See also* Ind. Code § 35-38-2.5-13 (describing misdemeanor unauthorized absence from home detention as the offender leaving or remaining outside his home without permission or traveling to unauthorized location).

Based on the foregoing, we conclude that Barker's 120-day home detention was part

---

[4] In *Lewis*, another panel of this Court held that the trial court acted within its discretion in not awarding the defendant credit for time served in *pretrial* home detention. 898 N.E.2d at 1292. Relying on our supreme court's holding in *Purcell*, 721 N.E.2d at 224, n.6, the *Lewis* court emphasized that there was no statute mandating a credit for time served when the home detention occurs before trial. The *Lewis* court explained the difference in the positions of pretrial and post-sentencing home detainees and concluded that they were neither similarly situated nor incongruously treated. *Id*. at 1290. *See also Senn v. State*, 766 N.E.2d 1190, 1201-02 (Ind. Ct. App. 2002) (holding that defendant had failed to establish disparate and preferential treatment between pretrial and post-sentencing home detainees).

of his executed sentence and that by ordering it in addition to his forty-year commitment to the DOC, the trial court exceeded the forty-year cap on the executed portion of his sentence. Consequently, we remand for a new sentencing order that does not violate the forty-year cap outlined in Barker's plea agreement.

### III. Inappropriateness of Sentence

Barker also asks that we review and revise his sentence under Indiana Appellate Rule 7(B), which states that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [this] Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." When a defendant requests appellate review and revision of his sentence, we have the power to affirm or reduce the sentence. *Akard v. State*, 937 N.E.2d 811, 813 (Ind. 2010). In conducting our review, we do not look to see whether the defendant's sentence is appropriate or if another sentence might be *more* appropriate; rather, the test is whether the sentence is "inappropriate." *Fonner v. State*, 876 N.E.2d 340, 344 (Ind. Ct. App. 2007). A defendant bears the burden of persuading this Court that his sentence meets the inappropriateness standard. *Anglemyer*, 868 N.E.2d at 490; *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

In considering the nature of a defendant's offense, "the advisory sentence is the starting point the Legislature has selected as an appropriate sentence." *Anglemyer*, 868 N.E.2d at 494. Barker was sentenced to a forty-five-year term for his class A felony conviction, which carries a thirty-year advisory term. Ind. Code § 35-50-2-4. The offense to which he pled guilty is neglect of a dependent causing death, which occurs when "[a] person

13

having the care of a dependent … knowingly or intentionally … places the dependent in a situation that endangers the dependent's life or health," the perpetrator is at least age eighteen, and the incident results in the death of a dependent who is under age fourteen. Ind. Code § 35-46-1-4(a)(1), -(3).

Barker concedes that the results of his offense were tragic but claims that the legislature already factored this in by classifying neglect of a dependent as a class A felony when it results in death. To end our analysis as he suggests would be to overlook the heinous nature of his particular offense. J.S.'s injuries indicate infliction of pain extending well beyond a roll off a couch. These injuries were vast and gruesome, including at least three brain injuries as well as injuries to the jaw, neck, buttocks, thigh, penis, abdomen, spleen, and pancreas. Moreover, the twenty-two-month-old J.S. was physically defenseless against the six-foot-three, 250-pound Barker and could not even tell his mother what had happened and that an ambulance had never been called. In short, the evidence paints a picture not merely of a distracted adult who failed to protect a child from danger but of a violent adult who perpetrated a lethal attack on a vulnerable toddler.

Barker *was* the danger. His breaches of trust as to both J.S. and Mother as well as his poor conduct during previous periods of incarceration reflect negatively upon his character. At the time of his offense, he was living with Mother in a romantic relationship and was supposed to be caring for her toddler while she worked to provide for the family. The child depended on him for care, and he breached that position of trust by physically attacking him. Additionally, Barker breached Mother's trust on many levels: (1) Mother trusted him to care

14

for her child; instead, he attacked him; (2) she trusted him to give her a truthful account of what caused J.S.'s injuries; instead, he lied and characterized the incident as an accidental roll off the couch; (3) she trusted him to call for help when her child was injured; instead, he said that he called for an ambulance when he did not; and (4) she trusted him when he told her that the paramedics had examined J.S. and determined that he would be fine. In short, Barker's lies deterred Mother from seeking medical attention that may have saved J.S.'s life. Finally, we note that the presentence investigation report indicates that Barker has a probation violation as well as a history of troublemaking while incarcerated, i.e., flooding his cell, destroying property, and battering a fellow inmate. Barker's character simply does not merit a more lenient sentence. Thus, subject to our holding in section II of this decision, we conclude that Barker has failed to meet his burden of demonstrating that his sentence is inappropriate.

Based on the foregoing, we remand for a sentencing order that does not exceed the forty-year cap on the executed portion of Barker's sentence. In all other respects, we affirm his sentence.

Remanded.

BARNES, J., and PYLE, J., concur.