## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 31 2017, 9:47 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Linda L. Harris<br>Kentland, Indiana | Curtis T. Hill, Jr.<br>Attorney General of Indiana |
| | Jesse R. Drum<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Andrew S. Raines,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | October 31, 2017<br><br>Court of Appeals Case No.<br>86A05-1705-CR-965<br><br>Appeal from the<br>Warren Circuit Court<br><br>The Honorable<br>Hunter J. Reece, Judge<br><br>Trial Court Cause No.<br>86C01-1612-F6-52 |

**Kirsch, Judge.**

[1] Following a jury trial, Andrew S. Raines ("Raines") was convicted of Level 6 felony auto theft.[1] Previously, Raines had pleaded guilty, in the same cause of action, to two counts of Class B misdemeanor false informing.[2] The trial court sentenced Raines on the three convictions, and he now appeals, raising the following two restated issues:

> I. Whether the trial court abused its discretion in sentencing Raines because, at the sentencing hearing, the trial court had stated Raines was to serve his incarceration at Indiana Department of Correction ("DOC"), but in its written sentencing order, the trial court ordered Raines to serve his time at the Warren County Jail; and

> II. Whether the State, during the rebuttal portion of its closing argument, committed prosecutorial misconduct that constituted fundamental error.

[2] We affirm.

## Facts and Procedural History

[3] On December 19, 2016, Raines was living with a woman known as Lela Faye ("Faye") and her nine-year-old son ("Son"). Due to an altercation that was occurring at their residence, Faye instructed Son to run to the home of her friend, Patricia Stump ("Stump"), and summon help. Stump at that time was living with her then-boyfriend, Sean Ingram ("Ingram"), in an apartment.

---

[1] *See* Ind. Code § 35-43-4-2.5(b)(1).

[2] *See* Ind. Code § 35-44.1-2-3(d)(1).

Stump's friend, Rachel Cooper ("Cooper"), lived in the apartment located above Stump. Son knocked on Stump's door and asked for help, and, in response, Stump and Cooper drove Son back to Faye's house in Ingram's Subaru Legacy vehicle, while Ingram remained with Stump's children. When Stump and Cooper arrived, Faye and Raines were on the front porch. Stump and Cooper asked Raines to leave, an argument or an altercation ensued, and the police were called. Before police arrived, Raines ran from the house, got in Ingram's Subaru, and drove away. Eight days later, on December 27, 2016, authorities found Ingram's Subaru, along with Raines, in St. Louis, Missouri.

[4] The State charged Raines with Count I, Level 6 felony auto theft and Counts II and III, Class B misdemeanor false informing. *Appellant's App*. *Vol. II* at 2-3. On March 6, 2017, Raines pleaded guilty to the two counts of false informing, and, on March 23, 2017, a jury trial was held on the auto theft charge.

[5] At trial, one issue was whether Ingram had given his consent to Raines to take the Subaru. Among other witnesses, Stump, Cooper, and Ingram testified for the State, and Raines testified in his defense. Stump stated that Raines did not ask her if he could take the Subaru before he left in it, and Cooper testified, "[Raines] asked nobody's permission, he just walked out" and left in Ingram's car. *Tr. Vol. II* at 59. Ingram testified that he gave his permission to Stump to take his car to Faye's house, but he did not give his consent to Raines to use or take the Subaru on that date. *Id*. at 65, 66-67. Raines testified that he had driven Ingram's car on several prior occasions and that Ingram previously had told him, "[Y]ou can use the car anytime you want it. Anytime that you need

to use the car, you can use it." *Id*. at 83. Raines stated that, to get away from the "commotion" at Faye's home, he left in Ingram's car and drove to Ingram's house, where Ingram was on the front porch. According to Raines, Ingram suggested to Raines that he should "get out of here[,]" telling Raines that he would call him "when the smoke clears." *Id*. at 82-83, 85.

[6]     During closing argument, defense counsel suggested that Ingram might have given his consent, as Raines claimed, but testified to the contrary because he did not want to contradict Stump. Counsel argued, "[Ingram]'s not going to do that. He wouldn't do that because they live together, he doesn't want the controversy." *Id.* at 102. The State's rebuttal included the following remarks, with which Raines now takes issue:

> The evidence that is established by people who have no motive to come here and lie to you. In fact, that's the only way they can get in trouble. The only way they can get in trouble is to come in here and lie just as he did two [] prior occasions. There is no motive for them to do that, and they came in here and they told you what happened.

*Id.* at 104. Raines did not object to the prosecutor's comments.

[7]     The jury found Raines guilty of Level 6 auto theft. At the April 18, 2017 sentencing hearing, the trial court sentenced Raines to two years on Count I and to 180 days each on Counts II and III, which were ordered to be served concurrent with each other and concurrent with Count I. At the hearing, the trial court stated that Raines was sentenced to "two years in the [DOC]" with credit for pretrial confinement. *Id.* at 124. In the trial court's Judgment of

Conviction and Pronouncement of Sentence, issued that same date, the trial court ordered that Raines was sentenced to "two [] years of incarceration in the Warren County Jail," reduced by pretrial confinement.[3] *Appellant's App. Vol. II* at 33.

[8] In May 2017, Raines filed a notice of appeal with this court, and, on July 18, 2017, he filed with the trial court a motion to correct erroneous sentence, asking the trial court to correct its sentencing order "to reflect that [Raines] was sentenced to two years in [DOC] rather than two years in the Warren County Jail." *Appellee's App. Vol. II* at 19, 22. That same day, the trial court issued an order that denied the motion, explaining that, under Indiana Code section 35-38-3-3, which became effective on March 29, 2017, a trial court "may not commit a person convicted of a Level 6 felony to the [DOC]" unless certain circumstances existed, none of which were applicable to Raines and, thus, the trial court *sua sponte* "corrected its own mistake" and sentenced Raines to the Warren County Jail instead of DOC. *Id.* at 23. Thereafter, on August 11, 2017, Raines filed his Appellant's Brief and now appeals.

---

[3] We note that on May 1, 2017, the trial court issued a Nunc Pro Tunc order for the April 28, 2017 Judgment of Conviction and Pronouncement of Sentence, adding a sentencing to state that Raines was indigent and that appointment of pauper counsel was warranted. *Appellant's App. Vol. II* at 35-36.

# Discussion and Decision

## I. Sentencing

[9] Raines argues that the trial court erred in sentencing him because, during the sentencing hearing, the trial court stated that it was sentencing Raines to two years in DOC, but its subsequent written Pronouncement of Sentence ordered Raines to two years of incarceration in the Warren County Jail. Raines did not provide us with an applicable standard of review, as required by Indiana Appellate Rule 46(A)(8)(b). Because the trial court sentenced Raines within the statutory range for his convictions, *see* Ind. Code sections 35-50-2-7 (Level 6 felony) and 35-50-3-3 (Class B misdemeanor), we will review the trial court's sentencing decision for an abuse of discretion. *See Barker v. State*, 994 N.E.2d 306, 311 (Ind. Ct. App. 2013) ("[A]s long as a sentence is within the statutory range, it is subject to review only for an abuse of discretion."). An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id*.

[10] On appeal, Raines (1) restates what happened, *i.e*, that the trial court's remarks at the hearing indicated he was sentenced to two years at DOC, but the written Pronouncement of Sentence ordered that he was sentenced to two years at the Warren County Jail, and (2) indicates that he would be filing a Motion to Correct Erroneous Sentence. Other than that, Raines presented no argument, reasoning, or authority in support of his position that the trial court abused its discretion when it sentenced him to the Warren County Jail rather than to

DOC. Thus, his argument on this issue is waived. Ind. Appellate Rule 46(A)(8)(a). Waiver notwithstanding, we find no error.

[11] As an initial matter, we observe that Raines's Appellant's Brief, filed August 11, 2017, states that he "will be filing a Motion to Correct Erroneous Sentence pursuant to I.C. 35-38-1-15 contemporaneously with the filing of Appellant's Brief." *Appellant's Br.* at 9. However, the record before us reflects that, before he filed his Appellant's Brief on August 11, Raines already had filed his Motion to Correct Erroneous Sentence on July 18, 2017 and that the trial court denied his motion the same day by written order ("the July 18 Order"), explaining:

> After imposing sentence [at the sentencing hearing], the Court recalled that recent legislation prohibited most [L]evel 6 felons from being incarcerated at DOC, absent an exception, thus the Court *sua sponte* **corrected its own misstatement**. Effective March 29, 2017, I.C. § 35-38-3-3 was amended to provide that "a court may not commit a person convicted of a Level 6 felony to the department of correction, unless . . ." one of the exceptions provided for in I.C. § 35-38-3-3(d)(l), (d)(2)(A), (d)(2)(b) or (d)(2)(C) are met. None of those exceptions applied here. The DOC's acceptance or rejection of inmates, sentenced to incarceration, is not an issue for the trial court. Therefore, the **Court's Order made a correction to a statement that was merely dicta**, as the Defendant's placement was controlled by statu[t]e, not the Court.
>
> For the forgoing reasons, the Court finds and clarifies that the Defendant's sentence on Count I was two (2) years of incarceration. Any reference to DOC or the Warren County Jail was dicta, and the Defendant may be incarcerated wherever appropriate, be it prison or jail. Though it appears from the facts of this case that he is not eligible to be incarcerated at DOC.

*Appellee's App. Vol. II* at 23 (emphasis added).

[12] Although not raised by either party, we note that we had some question about the trial court's jurisdiction to issue the July 18 Order.[4] Under Indiana Appellate Rule 8, "[t]he Court on Appeal acquires jurisdiction on the date the trial court clerk issues its Notice of Completion of Clerk's Record." The general rule is that, once an appeal is perfected, the trial court loses subject matter jurisdiction over the case. *Clark v. State*, 727 N.E.2d 18, 20 (Ind. Ct. App. 2000). The policy underlying the rule is to facilitate the efficient presentation and disposition of the appeal and to prevent the simultaneous review of a judgment by both a trial and appellate court. *Id.* at 21.

[13] Here, the CCS does not reflect a date of filing of Notice of Completion of Clerk's Record; however, the CCS contains two separate dates of filing Notice of Completion of Transcript: June 16 and June 29, 2017. Raines's Appellant's Brief was initially tendered July 17, 2017, but officially filed, after correction of defects, on August 11, 2017. Given this timeline, and pursuant to Indiana Appellate Rule 45(B), requiring the appellant's brief to be filed thirty days after Completion of the Clerk's Record, we infer that the Clerk's Record was complete before Raines tendered his Appellant's Brief on July 17, 2017. Thus, the trial court's July 18 Order was issued after this Court had acquired

---

[4] "Subject matter jurisdiction cannot be waived, and courts are required to consider the issue *sua sponte*." *Watkins v. State*, 869 N.E.2d 497, 499 (Ind. Ct. App. 2007).

jurisdiction. However, while the general rule is that trial courts lose jurisdiction once the appeal is perfected, there are exceptions that permit the trial court to retain jurisdiction notwithstanding an appeal. "For example, a trial court may retain jurisdiction to reassess costs, *correct the record,* enforce a judgment, continue with a trial during an interlocutory appeal concerning venue, or preside over matters which are independent of and do not interfere with the subject matter of the appeal." *Clark*, 727 N.E.2d at 21 (emphasis added). In this case, we find that the trial court's July 18 Order did even less than "correct the record," as that Order merely *clarified* that its written Pronouncement of Sentence "corrected its own misstatement" that was made at the sentencing hearing. *Appellee's App. Vol. II* at 23. The trial court's July 18 Order is thus not void for lack of jurisdiction, and we now turn to it.

[14] The July 18 Order explained that, following the hearing that same date, the trial court realized that its statement at the hearing indicating that Raines would serve his two years at DOC was incorrect because, under Indiana Code section 35-38-3-3(d), it could not sentence Raines to DOC. That statute reads:

> After December 31, 2015, a court may not commit a person convicted of a Level 6 felony to the department of correction unless:
>
> (1) the commitment is due to the revocation of the person's sentence for violating probation, parole, or community corrections and the revocation of the person's sentence is due to a new criminal offense; or

> (2) the person:
>
>> (A) is convicted of a Level 6 felony and the sentence for that felony is ordered to be served consecutively to the sentence for another felony;
>>
>> (B) is convicted of a Level 6 felony that is enhanced by an additional fixed term under IC 35-50-2-8 through IC 35-50-2-16; or
>>
>> (C) has received an enhanced sentence under IC 9-30-15.5-2;
>
> and the person's earliest possible release date is more than three hundred sixty-five (365) days after the date of sentencing.

Ind. Code § 35-38-3-3(d).

[15] Raines was convicted of a Level 6 felony, and none of the statute's exceptions applied to Raines; therefore, the trial court could not sentence Raines to DOC. Accordingly, Raines has failed to show that the trial court abused its discretion when it sentenced him to two years at the Warren County Jail.

## II. Prosecutorial Misconduct

[16] Raines asserts that the State committed prosecutorial misconduct in its rebuttal closing argument by making "vouching statements" concerning "the State's witnesses." *Appellant's Br*. at 10. Specifically, Raines challenges the following:

> The evidence that is established by people who have no motive to come here and lie to you. In fact, that's the only way they can

get in trouble. The only way they can get in trouble is to come in here and lie just as he did two [] prior occasions. There is no motive for them to do that, and they came in here and they told you what happened.

*Tr. Vol. II* at 104. He claims that the State "implicitly told the jury, [']listen, my witnesses told you the truth because they didn't get in trouble for coming before you and testifying[,] and therefore they are not lying.[']" *Appellant's Br* at 10.

[17] "To preserve a claim of prosecutorial misconduct, the defendant must—at the time the alleged misconduct occurs—request an admonishment to the jury, and if further relief is desired, move for a mistrial." *Ryan v. State*, 9 N.E.3d 663, 667 (Ind. 2014). Raines concedes that at trial he did not pose any objection to the State's closing argument, and, therefore, to avoid procedural default, he must establish fundamental error. *Appellant's Br.* at 10 (citing *Booher v. State*, 773 N.E.2d 814, 817 (Ind. 2002)). The fundamental error exception is an extremely narrow exception to the waiver rule and requires the defendant to show that the alleged errors are so prejudicial to his or her rights as to make a fair trial impossible. *Ryan*, 9 N.E.3d at 668. "In other words, to establish fundamental error, the defendant must show that, under the circumstances, the trial judge erred in not *sua sponte* raising the issue because alleged errors (a) constitute clearly blatant violations of basic and elementary principles of due process and (b) present an undeniable and substantial potential for harm." *Id.* (internal quotations omitted).

[18] The State maintains that the challenged rebuttal remarks were a permissible response to defense counsel's closing argument, which implied that Stump and Cooper lied when testifying because they were upset with Raines and that Ingram lied because he lived with Stump and did not want to contradict her and thereby create controversy. According to the State, "'The prosecutor was entitled to counter with argument that the witness[es were] not lying and had no reason to do so.'" *Appellee's Br.* at 12 (quoting *Dumas v. State*, 803 N.E.2d at 1113, 1118 (Ind. 2004)). Even assuming that the challenged portion of the State's rebuttal argument constitutes vouching and prosecutorial misconduct, as Raines's contends, we find that Raines's claim fails as he has not established fundamental error. He has not argued or explained in what way the prosecutor's comments were so prejudicial to him that a fair trial was impossible, nor has he shown that the trial judge erred in not *sua sponte* raising the issue. *See Ryan*, 9 N.E.3d at 668. Raines's assertion of prosecutorial misconduct fails.

[19] Affirmed.

Najam, J., and Brown, J., concur.