## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 26 2018, 8:22 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Derick W. Steele
Kokomo, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Paul W. Calloway, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | June 26, 2018 <br><br> Court of Appeals Case No. <br> 18A-CR-186 <br><br> Appeal from the <br> Howard Superior Court <br><br> The Honorable <br> George A. Hopkins, Judge. <br><br> Trial Court Cause No. <br> 34D04-1605-F1-83 |

**Kirsch, Judge.**

[1] Paul W. Calloway ("Calloway") pled guilty to attempted aggravated battery[1] as a Level 3 felony and was sentenced to twelve years in the Indiana Department of Correction ("DOC"). He now appeals his sentence contending that it is inappropriate in light of the nature of the offense and the character of the offender.

[2] We affirm.

## Facts and Procedural History

[3] At 2:13 a.m., on May 1, 2016, Sergeant Mark Miller ("Sgt. Miller") and Officer Ryan Shuey ("Officer Shuey") of the Kokomo Police Department were dispatched to investigate a report of a man attempting to break into a shed. *Appellant's App. Vol. 2* at 19. Approximately thirty minutes prior to this, another officer had been called to that same area following a report that gunshots had been heard, but no suspect was found by the investigating officer at that time. *Id*. at 19, 21. The shed in question was located behind a house in a populated area where apartments and other homes were also located. *Id*. at 21. A tree line wrapped along the eastern and northern boundaries of the property. *Id*. at 19. After arriving on scene, the officers parked their vehicle, and Sgt. Miller entered the tree line in order to seek cover as he approached the shed. *Id*. As he did so, Sgt. Miller noticed what appeared to be a cellphone screen glowing

---

[1] *See* Ind. Code § 35-42-2-1.5.

near the ground. *Id.* at 20. Sgt. Miller walked towards the glowing light and found Calloway hidden beneath a bush, lying on his side and facing the opposite direction. *Id.*

[4] Sgt. Miller ordered Calloway to roll over and to show his hands. *Id.* As Calloway turned, Sgt. Miller could see that Calloway was holding a gun. *Id.* As Sgt. Miller began to move away, Calloway fired the weapon at him four times. *Id.* Sgt. Miller ran approximately twenty feet away from the place where Calloway was lying before firing his own gun and then seeking cover behind a nearby tree. *Id.* Officer Shuey also discharged his firearm several times. *Id.* at 21. Of the shots that were fired, none hit any of the individuals involved, and no one was physically injured. *Id.* at 20-21.

[5] From his shelter behind the tree, Sgt. Miller began to negotiate with Calloway in an effort to keep him from firing additional rounds. *Id.* at 20. Other officers arrived on the scene and set up a horseshoe perimeter around Calloway's location. *Id.* Officers placed a light on Calloway, and he was observed pointing his gun at his head. *Id.* Sgt. Miller talked with Calloway for forty-five minutes, and Calloway told Sgt. Miller that he had recently been released from prison after serving a twenty-four-year sentence for child molestation and that he had recently been accused of reoffending. *Id.* at 20, 55. Because of this, Calloway told Sgt. Miller, he wanted the police to kill him. *Id.* at 20; *Tr. Vol. II* at 16.Throughout the standoff, Calloway refused to relinquish his gun. *Appellant's App. Vol. 2* at 20; *Tr. Vol. II* at 17. At times, Calloway would sit up, put his gun

in his mouth, and then lay back down again. *Appellant's App. Vol. 2* at 20. Eventually, the Kokomo SWAT Team arrived on the scene and took over the negotiations. *Id.*

[6] Calloway surrendered at 6:23 a.m., approximately four hours after Sgt. Miller and Officer Shuey first arrived on the scene. *Id.* at 20-21. The State charged Calloway with one count of Level 1 felony attempted murder and one count of Level 6 felony resisting law enforcement. *Id.* at 15-16. Calloway pleaded guilty to Level 3 felony attempted aggravated battery and was sentenced to twelve years all to be executed in the DOC. *Id.* at 9, 47-51. Calloway now appeals.

## Discussion and Decision

[7] For his Level 3 felony attempted aggravated battery conviction, the trial court sentenced Calloway to twelve years with no time suspended. Calloway now argues that his sentence is an inappropriate sentence in light of the nature of the offense and his character and contends that his sentence should be what the probation sentencing report suggested: nine years, with three years executed, and the balance suspended to supervised probation, with credit for time already served.

[8] Pursuant to Indiana Appellate Rule 7(B), this Court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Our Supreme Court has explained that the principal role of appellate review should be to attempt to leaven the outliers,

"not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). We independently examine the nature of Calloway's offense and his character under Appellate Rule 7(B) with substantial deference to the trial court's sentence. *Satterfield v. State*, 33 N.E.3d 344, 355 (Ind. 2015). In conducting our review, the test is whether the sentence is inappropriate, and we do not look to see whether another sentence might be *more* appropriate. *Barker v. State*, 994 N.E.2d 306, 315 (Ind. Ct. App. 2013), *trans. denied*. Calloway bears the burden of persuading us that his sentence is inappropriate. *Id.*

[9] "As to the nature of the offense, the advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed." *Kunberger v. State*, 46 N.E.3d 966, 973 (Ind. Ct. App. 2015). The advisory sentence for a Level 3 felony conviction is nine years, with a range of between three and sixteen years. Ind. Code § 35-50-2-5.

[10] The nature of the offense is found in the details and circumstances of the commission of the offense and the defendant's participation. *Croy v. State*, 953 N.E.2d 660, 664 (Ind. Ct. App. 2011). Here, Calloway highlights that, at the time of the offense, he was suffering from an extreme mental illness and did not intend to injure a police officer, but instead, wanted to end his own life. Calloway indicates that he was suicidal for many reasons: he had several health problems; he had lost his health insurance; and he had recently suffered the loss of his fiancée.

[11] Our review of the record reveals that the circumstances of the offense are that police were called to investigate a report of an individual attempting to break into a shed. Sgt. Miller found Calloway in a wooded area hidden beneath a bush, lying on his side and facing the opposite direction. After being instructed to roll over and show his hands, Calloway displayed a gun and fired four shots at Sgt. Miller. Sgt. Miller returned fire. Calloway was initially charged with one count of Level 1 felony attempted murder and one count of Level 6 felony resisting law enforcement and eventually pleaded guilty to Level 3 felony attempted aggravated battery. We agree with the State that "Calloway accepted a plea agreement at substantial benefit to himself. Had he elected not to plead guilty, he would have faced a trial for Level 1 felony attempted murder, which carried a minimum sentence of [twenty] years if convicted.[2]" *Appellee's Br.* at 9. Nothing about the nature of the offense warrants a reduction in the imposed sentence.

[12] "The character of the offender is found in what we learn of the offender's life and conduct." *Croy*, 953 N.E.2d at 664. Calloway argues that his prior criminal history was not the most heinous. He contends that his character did not warrant the twelve-year sentence. Calloway has two prior felony convictions, burglary and criminal sexual conduct, and a misdemeanor, operating a vehicle while intoxicated. Calloway was required to register as a sex offender because of his criminal sexual conduct felony conviction. At the

---

[2] *See* Ind. Code § 35-50-2-4(b)

time of this offense, Calloway was out on bond for the misdemeanor charge. Based on the record before us, we cannot say that his character warrants revision of his sentence.

[13]　Calloway has failed to carry his burden of establishing that his sentence is inappropriate in light of the nature of the offense and his character.

[14]　Affirmed.

Baker, J., and Bradford, J., concur.