## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 19 2021, 8:55 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Arturo Rodriguez II<br>Lafayette, Indiana | Theodore E. Rokita<br>Attorney General of Indiana<br><br>Jodi Kathryn Stein<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Bobby L. Peck,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | January 19, 2021<br><br>Court of Appeals Case No.<br>20A-CR-1583<br><br>Appeal from the Warren Circuit Court<br><br>The Honorable Hunter Reece, Judge<br><br>Trial Court Cause No.<br>86C01-1904-F6-36 |

**Altice, Judge.**

# Case Summary

Following his guilty plea to two counts of Level 6 felony identity deception and his admission to being a habitual offender, Bobby Peck appeals his aggregate four-year executed sentence. He asserts that his sentence is inappropriate in light of the nature of the offenses and his character.

We affirm.

# Facts & Procedural History

On April 22, 2019, a trooper with the Indiana State Police stopped a vehicle, later determined to be driven by Peck, on U.S. Highway 41 for speeding. The trooper approached and, while speaking to Peck, smelled what he recognized to be marijuana. At the trooper's request, Peck and the passenger exited the vehicle. During a search of the vehicle, the trooper found five driver's licenses bearing the name of Douglas Grant and two bearing the name of Christopher Simmons, with each having a separate license number. Peck's photo was on them all. The trooper also found checks and a prepaid debit card in Grant's name and two checks in Simmons's name. Additionally, the trooper found twenty-eight counterfeit twenty-dollar bills. The trooper ran a computer check on the driver's licenses and learned they were fake.

On April 29, 2019, the State charged Peck with Level 6 felony identity deception, Level 6 felony synthetic identity deception, and two counts of Class A misdemeanor false government identification. On April 10, 2020, the State filed a notice of enhancement, alleging that Peck was a habitual offender, based

on three prior convictions: a September 1980 Class B felony rape; a September 1986 murder; and a November 2017 conviction in Michigan for stealing a financial transaction device.

[5] On July 1, 2020, Peck pled guilty to the two Level 6 felony counts of identity deception and admitted to being a habitual offender, and the State dismissed the remaining charges. The sentencing terms were left open to the trial court's discretion, other than that Peck's enhancement on the habitual offender was set at two years and that the sentences on each of the two felonies would run concurrent with each other and concurrent to his sentence on a federal counterfeiting case that was pending in the Western District of North Carolina. The next day, the court accepted the guilty plea and set the sentencing hearing for July 29, 2020.

[6] At the sentencing hearing, the court acknowledged having received and reviewed the presentence investigation report. Peck apologized for his wrongdoing and indicated his acceptance of responsibility. In its sentencing statement, the court found Peck's history of criminal or delinquent behavior to be an aggravating circumstance, as well as the fact that Peck "recently violated conditions of probation, parole, pardon, community corrections, and placement or pretrial release[.]" *Appellant's Appendix* at 54. The court found as mitigating that Peck entered a plea of guilty "which shows remorse and accountability" and that he did not cause or threaten bodily harm. *Id*. The court sentenced Peck to two years on each of the two Level 6 felonies, to be served concurrently, and enhanced his sentence by two years for the habitual offender

finding, for a total sentence of four years to be served at the Indiana Department of Correction (DOC). Peck now appeals.

# Discussion & Decision

[7] Peck asserts that the four-year sentence is inappropriate and asks us to revise his sentence to a shorter executed term so that he can obtain needed mental health treatment that would be available to him on probation. Pursuant to Ind. Appellate Rule 7(B), we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find the sentence inappropriate in light of the nature of the offenses and the character of the offender. Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented, and deference to the trial court "prevail[s] unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015). The principal role of appellate review should be to attempt to leaven the outliers, "not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). The burden is on the defendant to persuade us his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[8] As to the nature of the offense, the advisory sentence is the starting point the Legislature has selected as an appropriate sentence for the crime committed. *Id.*

at 1081. For each of his Level 6 felony convictions, Peck faced between six months and two and one-half years, with the advisory sentence being one year. Ind. Code § 35-50-2-7(b). Here, the trial court imposed two years on each of Peck's two convictions, to be served concurrently, and it entered the agreed upon two-year enhancement,[1] for an aggregate four-year sentence.

[9] As this court has recognized, "[t]he nature of the offense is found in the details and circumstances of the commission of the offense and the defendant's participation." *Croy v. State*, 953 N.E.2d 660, 664 (Ind. Ct. App. 2011). Peck argues that there is nothing particularly egregious about the nature of the offenses, noting that he was only stopped for speeding and was cooperative with the trooper, and that "the record does not show that that there was any harm to anyone in these crimes." *Appellant's Brief* at 10. However, Peck was found with seven fake licenses, as well as checks and a debit card, that he admitted he intended to use. While that did not cause physical harm to Grant or Simmons, it certainly could have caused – and may indeed have caused – significant grief or financial harm to them. Peck has not established that the nature of the offenses warrants reduction of the trial court's sentence.

[10] "The character of the offender is found in what we learn of the offender's life and conduct." *Croy*, 952 N.E.2d at 664. When considering the character of the

---

[1] But for the plea agreement, the court could have imposed up to an additional six years for Peck's status as a habitual offender. I.C. § 35-50-2-8(i)(2) (stating range is two to six years for person convicted of Level 5 or Level 6 felony).

offender, "'one relevant fact is the defendant's criminal history,' and '[t]he significance of criminal history varies based on the gravity, nature, and number of prior offenses in relation to the current offense.'" *Sanders v. State*, 71 N.E.3d 839, 844 (Ind. Ct. App. 2017) (quoting *Garcia v. State*, 47 N.E.3d 1249, 1251 (Ind. Ct. App. 2015), *trans. denied*), *trans. denied*. The trial court may consider not only the defendant's adult criminal history but also his juvenile delinquency record in determining whether his criminal history is significant. *Id.*

[11]  Peck began having encounters with the juvenile system when he was eleven or twelve years old, facing charges of, among other things, what would be theft, fraud, disorderly conduct, auto theft, and robbery if committed as an adult. He was committed for a period of time to the Indiana Boys' School. Thereafter, while on supervised probation, he faced charges of, among other things, assault, possession of a weapon, truancy, and theft. He was committed to other placements and was eventually paroled from the Boys' School in September 1979. In January 1980, he was arrested for rape and waived to adult court, where he was convicted of Class B felony rape and sentenced to ten years in the DOC, which sentence was later modified to six years. He was released from parole in January 1986.

[12]  In June 1986, he committed a murder. He pled guilty and was sentenced in September 1986 to sixty years in the DOC. He reported in his presentence investigation report to spending fourteen years in solitary confinement due to disciplinary problems. He was discharged to parole in December 2015 and then released from parole in December 2016.

[13] A string of deception-type crimes ensued. In November 2017, he pled guilty to Class A misdemeanor false government identification, was sentenced to one year, with thirty-six days to be executed, and the balance was suspended to probation. In July 2017, he pled guilty to a Michigan felony offense for stealing a financial transaction device. In June 2018, he pled guilty to Level 6 forgery that occurred in July 2017. He was sentenced to one and one-half years, served thirty days, and the balance was suspended to probation, which he then violated. In November 2017, he was convicted of misdemeanor false government identification. While on probation, he committed the present offenses in April 2019. While out on bond in this case, he committed another offense, misdemeanor reckless driving.

[14] Peck acknowledges having a significant criminal history but maintains that "it is clear" that he "needs mental health rehabilitation" and that "mere incarceration fails to solve [his] mental health issues." *Appellant's Brief* at 11. Thus far, Peck's mental health issues are self-diagnosed, with him reporting that he suffers from PTSD due to all the years in prison. He previously reported the following observation about himself to a probation officer: "After being locked up for 29 years, yes, I am f*cked up, but I do not know to what degree." *Appellant's Appendix* at 51. While we hope that Peck ultimately will seek and obtain the treatment and support he needs, we cannot agree that the sentence imposed by the trial court was inappropriate. Peck's long and serious criminal history and his reported disciplinary issues while incarcerated reflect poorly on his character and do not support any sentence revision. We also agree with the

State that, even if we were to give "low significance to [Peck]'s past rape and murder convictions, his multiple recent fraud/property convictions are directly related to the present convictions and are highly reflective of his poor character." *Appellee's Brief* at 10.

[15] Our task on appeal is not to determine whether another sentence might be more appropriate; rather, the inquiry is whether the imposed sentence is inappropriate. *Miller v. State*, 105 N.E.3d 194, 196 (Ind. Ct. App. 2018); *Barker v. State*, 994 N.E.2d 306, 315 (Ind. Ct. App. 2013), *trans. denied*. Peck has failed to carry his burden of establishing that his sentence is inappropriate in light of the nature of the offenses and his character.

[16] Judgment affirmed.

Mathias, J. and Weissmann, J., concur.