## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 31 2018, 10:21 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

A. David Hutson
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Isaac J. Lukes, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | October 31, 2018 <br><br> Court of Appeals Case No. 18A-CR-887 <br><br> Appeal from the Clark Circuit Court <br><br> The Honorable Vicki L. Carmichael, Judge <br><br> Trial Court Cause Nos. 10C04-1510-F3-51, 10C04-1610-F3-63 |

**Altice, Judge.**

[1] In this consolidated appeal,[1] Isaac J. Lukes appeals the sentence imposed following his plea of guilty to eleven Level 3 felonies, consisting of four counts of armed robbery while armed with a deadly weapon and seven counts of criminal confinement while armed with a deadly weapon. On appeal, Lukes argues that his aggregate sentence of twenty-seven years with five years suspended is inappropriate.

[2] We affirm.

## Facts & Procedural History

[3] Around 10:00 p.m. on April 23, 2015, Lukes, who was fifteen years old, entered a Sav-A-Step Food Mart store, pointed a semi-automatic pistol at an employee's face and directed her to open the cash register. She gave Lukes the money from the cash drawer, approximately $450, and he ran from the store.

[4] Two nights later, on April 25, 2015, Lukes confronted two Family Dollar employees as they were closing and exiting the store. He jumped out from behind a Redbox kiosk and pointed a gun at them, forcing them back inside the store, where he demanded money from the safe. At one point, an employee dropped some change, which Lukes made him pick up, and because the employee "wasn't going fast enough," Lukes "kept tapping [the employee] on the head with the gun like five or six times." *Transcript Vol. 2* at 39. Before

---

[1] This appeal stems from two separate guilty plea agreements under two separate cause numbers. Initially, Lukes filed a separate appeal for each, but the two appeals were later consolidated by this court.

Lukes left, he had the employees lie on the floor face down, and he said, "[T]here's one more thing I have to do to you all, I have to kill you" and then he pulled the trigger. *Id* at 39. The gun made a clicking sound, causing the employee to fear for his life. Lukes said that he was "kidding" but confirmed that he had bullets in his pocket. *Id*.; *see also id*. at 43. Lukes took approximately $3000 in cash, in addition to tobacco products worth $700. Before leaving, Lukes instructed the employees not to leave for ten minutes and not to call the police. The robbery lasted about one hour.

[5] Around 10:00 p.m. on May 3, 2015, the manager of a Dollar General store was closing up and waiting outside for another employee. Lukes suddenly appeared, wearing a long, black "Scream outfit" and an "Incredible Hulk" mask and holding "what looked like a machine gun in one hand and a handgun in the other." *Id*. at 46, 50. He asked the manager, "[D]id I really scare you?" which made the manager suspect that "he was a kid." *Id*. at 46. About this time, as the other employee was nearing the door to leave, Lukes pointed a gun at them and ordered them back inside. While holding a gun to the manager's head, he instructed the other employee to turn off the alarm and open the safe. Lukes took approximately $2400. During the incident, he threatened to kill the manager. Lukes forced the employee to bind the manager's legs, wrists, and mouth with duct tape and made the manager bind the other employee's wrists. Lukes then taped the manager and the other employee together. Before he left the store, he took their cell phones, broke the security monitor, and cut a telephone line. Lukes stole the manager's vehicle, and when police, who had

been alerted to the robbery, tried to stop Lukes, he refused, resulting in a pursuit with speeds over 100 miles per hour. Eventually, he crashed the car and ran from police, but was discovered under a shipping container on a hospital loading dock. While in custody, Lukes admitted to commiting the robberies on April 23, April 25, and May 3, 2015.

[6] On October 26, 2015, the State filed a twenty-count Information against Lukes under Cause No. 10C04-1510-F3-051 (Cause No. 51), charging him with the following: five counts of Level 3 felony armed robbery; four counts of Level 3 felony criminal confinement; three counts of Level 3 felony kidnapping; two counts of Level 5 felony intimidation; two counts of Level 6 felony theft; and single counts of Level 6 felony auto theft, Level 6 felony resisting law enforcement, Class A misdemeanor resisting law enforcement, and Class B misdemeanor criminal mischief.

[7] While Lukes was out on bond in Cause No. 51, and was then sixteen years old, he robbed another Dollar General store on October 17, 2016. At closing time, Lukes was hiding by the door, and as several employees came out, he confronted them, and forced them back inside the store at gunpoint. He ordered the alarm to be turned off, and he demanded and received money from the safe. Before leaving, he locked the cell phone of one of the employees in the cash register, and he forced the employees into a bathroom at gunpoint and locked the door. He was in the store for about thirty to forty-five minutes. The manager described that, during the encounter, Lukes "said please and thank you and yes ma'am," and she "knew he was a kid." *Id.* at 60. He took about

$2100 from the store. As a result of the incident, the State charged Lukes on October 21, 2016, under Cause No. 10C04-1610-F3-063 (Cause No. 63), with one count of Level 3 felony armed robbery and three counts of Level 3 felony criminal confinement.[2]

[8] In November 2017, Lukes entered into separate plea agreements in Cause Nos. 51 and 63, and on December 19, 2017, the trial court held a consolidated guilty plea hearing. At that time, Lukes was eighteen years old. In Cause No. 63, Lukes pled guilty as charged to one count of Level 3 felony armed robbery and three counts of Level 3 felony criminal confinement. In Cause No. 51, he pled guilty to Counts 1, 2, 4, 5, 11, 19, and 20, which consisted of three counts of Level 3 felony armed robbery and four counts of Level 3 felony criminal confinement. The plea agreement in Cause No. 63 provided that Lukes had the right to file a petition to modify the length of his sentence after ten executed years and that the State had no objection to Purposeful Incarceration.

[9] In March 2018, the trial court held a sentencing hearing. Lukes's counsel urged the trial court to consider that Lukes was fifteen years old when this crime spree started, that the adolescent brain is not fully developed and does not appreciate risks or consequences as an adult does, and that he was cooperative with police. Counsel also argued that Lukes was remorseful and was a "model prisoner" while in the Clark County Jail for 917 days while the matter was pending. *Id.*

---

[2] Lukes was charged as a juvenile in Cause No. 51 and 63, but was subsequently waived into adult court.

at 67. The State countered that Lukes planned the crimes, held people at gunpoint for extended periods, confined them, threatened to kill some, and placed individuals in fear of dying. He cut phone lines, stole a vehicle, and evaded police. The State contrasted these robberies from grabbing money from a cash drawer and running out.

[10] Lukes presented documentary evidence from a psychiatrist who evaluated him when he was sixteen. The report recognized that the human brain does not reach maturity until the age of twenty-five and opined that because Lukes was born very prematurely his cognitive development was significantly delayed. Another evaluation, also conducted when Lukes was sixteen, diagnosed Lukes with conduct disorder and with cannabis dependence and alcohol abuse.

[11] Lukes made a statement and apologized directly to the victims, stating that he was sorry for the hurt he caused physically, emotionally, and mentally. He stated that he regretted getting involved with the people he associated with at the time and that, with the drugs and crime, he became a person that he did not want to be. He explained that the "downward spiral" began "from [him] wanting to get accepted" and be considered "cool." *Transcript Vol. 2* at 33. He said that he committed the robberies to get money to get high. He acknowledged that he committed the October 2016 robbery while out on bond for the 2015 robberies. He remembered pointing a gun at someone's head, but because he was high, he did not remember more than that. Lukes stated that the gun he used was never loaded during the robberies, and he did not intend to harm anyone. He acknowledged that when he committed the crimes, he

"wasn't thinking about the consequences that came with it and what would happen to everybody that was involved including myself, including each and every one of you." *Id.* at 31. He testified that "the person that I was during all these crimes is not who I am today" and that, upon release, he intended to help kids avoid his situation. *Id*. at 34.

[12] The State presented the testimony of victims, who feared for their lives. Several noted that their assailant was young and, and they expressed hope that he would take the opportunity to change and get his life straightened out. The State also presented evidence of other psychological evaluations indicating that Lukes's IQ score is within the average range, his reading ability is equivalent to grade level 12.5, and tests did not show diminished cognitive abilities.

[13] The presentence investigation report reflected that Lukes's first contact with the juvenile system was in 2011, with an additional seven detentions in 2012 and 2013, for offenses such as running away, criminal mischief, operating without a license, possession of alcohol, and conversion. At the time of the sentencing hearing, Lukes had pending charges out of another county for Level 3 felony robbery and criminal confinement, stemming from a robbery that occurred on April 28, 2015. Lukes started using alcohol and marijuana at age twelve and completed an inpatient treatment program in 2013. By the time of the offenses, he was using alcohol several times a week and marijuana daily. He also took Xanax daily without a prescription. He also reported taking Lortabs several times a week.

The trial court identified Lukes's juvenile record as an aggravating circumstance, as well as the fact that he was out on bond in Cause No. 51 when the offenses in Cause No. 63 were committed. The trial court found Lukes's age at the time of the offenses to be a mitigating factor. It also stated that it considered the recognized science that the adolescent brain is not fully developed and does not appreciate consequences as an adult would. In Cause No. 51, the trial court sentenced Lukes to an aggregate term of eighteen years, with five years suspended.[3] In Cause No. 63, the trial court sentenced Lukes to an aggregate term of nine years,[4] which was ordered to be served consecutive to the sentences in Cause No. 51, resulting in an aggregate term of twenty-seven years with five years suspended. Pursuant to the plea agreements, the trial court recommended Lukes for Purposeful Incarceration and indicated that Lukes could seek modification of his sentence after he had served at least ten years. Lukes now appeals.

## Discussion & Decision

Lukes contends that his sentence is inappropriate. Pursuant to Indiana Appellate Rule 7(B), this Court "may revise a sentence authorized by statute if,

---

[3] Specifically, the trial court sentenced Lukes to the advisory nine years on Counts 1, 2, 4, 5 and to the advisory nine years on Counts 11, 19, and 20, ordering that five years on Counts 11, 19, and 20 be suspended to probation. Counts 1, 2, 4, and 5 were ordered to be served concurrently, and Counts 11, 19, and 20 were also ordered to be served concurrently with each other but consecutive to Counts 1, 2, 4 and 5, for an aggregate term of eighteen years, with five years suspended to probation.

[4] The trial court imposed the advisory sentence of three years on Counts 2, 3, and 4, to be served concurrently.

after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Our Supreme Court has explained that the principal role of appellate review should be to attempt to leaven the outliers, "not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). Sentencing review under Appellate Rule 7(B) is very deferential to the trial court. *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012). "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[16] The determination of whether we regard a sentence as inappropriate "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Bethea v. State*, 983 N.E.2d 1134, 1145 (Ind. 2013) (quoting *Cardwell*, 895 N.E.2d at 1224). The question under App. R. 7(B) is "not whether another sentence is more appropriate" but rather "whether the sentence imposed is inappropriate." *Miller v. State*, 105 N.E.3d 194, 196 (Ind. Ct. App. 2018). Lukes bears the burden of persuading us that his sentence is inappropriate. *Barker v. State*, 994 N.E.2d 306, 315 (Ind. Ct. App. 2013), *trans. denied*.

[17] In order to assess the appropriateness of a sentence, we first look to the statutory range established for the classification of the relevant offenses. Lukes

was convicted of eleven Level 3 felonies. The sentencing range for a Level 3 felony is three to sixteen years, with an advisory sentence of nine years. Ind. Code § 35-50-2-5. Because the advisory sentence is the starting point the legislature has chosen as appropriate for the crime committed, a defendant who has received the advisory sentence bears a particularly heavy burden in persuading us that his sentence is inappropriate. *Fernbach v. State*, 954 N.E.2d 1080, 1089 (Ind. Ct. App. 2011), *trans. denied.* Also, in assessing whether a sentence is inappropriate, "appellate courts may take into account whether a portion of the sentence is ordered suspended or is otherwise crafted using any of the variety of sentencing tools available to the trial judge." *Thompson v. State*, 5 N.E.3d 383, 391 (Ind. Ct. App. 2014). In this case, Lukes received the advisory sentence of nine years on each conviction, and the trial court suspended five years to probation. Lukes asks this court to revise his sentence to impose the minimum three years on each count and to suspend a portion of it, resulting in a "short-term" executed sentence, which would "serve the purpose of giving Lukes the 'wake-up call' that he needs to begin his reformation." *Appellant's Brief* at 11.

[18] As this court has recognized, "The nature of the offense is found in the details and circumstances of the commission of the offense and the defendant's participation." *Croy v. State*, 953 N.E.2d 660, 664 (Ind. Ct. App. 2011). In arguing that his crimes do not warrant "the long-term sentence" imposed by the trial court, Lukes asserts that the nature of his offenses "must be viewed in light of the descriptions of Lukes'[s] victims who described him as polite and

childlike, and who expressed pity for him." *Appellant's Brief* at 10.  He also highlights that no one was physically hurt in the incidents.  We are mindful of these considerations, but nevertheless disagree with Lukes that the nature of his offenses requires a reduction of his sentence.

[19]  Lukes planned and executed four robberies, each at closing time, when customers would not be around.  He held employees at gunpoint.  He confined them and threatened them.  He held a gun to the head of multiple victims, and, on one occasion, he even pulled the trigger on an unloaded gun, apparently intending to terrorize the employees even more.  The robberies lasted from thirty minutes to an hour, which is an extended period of time when people are in fear for their lives.  He demanded that alarms be turned off, took cell phones, and stole a vehicle, leading police on a high-speed pursuit, which put lives at risk.  We cannot say that the nature of Lukes's offenses warrants a reduced sentence.

[20]  "The character of the offender is found in what we learn of the offender's life and conduct."  *Croy*, 953 N.E.2d at 664.  Lukes urges that, although he has a history of juvenile delinquency, it was non-violent, and that such delinquent history "must be viewed in light of his youth, the delay in brain development caused by his premature birth, and his substance abuse problems" all of which "diminish his culpability."  *Appellant's Brief* at 10.  We cannot agree.  Lukes has a juvenile history that began in 2011 and escalated in severity.  He had robbery charges pending in another county at the time of sentencing.  Of particular concern is the fact that Lukes committed the three armed robberies in April and

May 2015 and was charged with twenty crimes, eighteen of which were felonies. Yet, about one year after being so charged, and while out on bond, he committed another armed robbery in October 2016. This decision does not reflect well on his character. Lukes asks us to revise his sentence to a "short-term" executed sentence that would give Lukes "the 'wake-up call' that he needs to begin his reformation." *Appellant's Brief* at 11. However, Lukes got that wake-up call when he was charged with twenty crimes, and, unfortunately, he did not heed it. Instead, he robbed again in similar fashion. We acknowledge that Lukes apparently has a substance abuse problem, as he received inpatient substance abuse treatment in 2013, but resumed abusing drugs and alcohol. While we appreciate his heartfelt apology at sentencing, we cannot say that his character warrants downward revision of his sentence.

[21] We reiterate that our task on appeal is not to determine whether another sentence might be more appropriate; rather, the inquiry is whether the imposed sentence is inappropriate. *Barker*, 994 N.E.2d at 315. Lukes has failed to carry his burden of establishing that his sentence – twenty-seven years with five years suspended and the opportunity for sentence modification after ten years executed – is inappropriate in light of the nature of the offense and his character.

[22] Judgment affirmed.

Brown, J. and Tavitas, J., concur.